NICHOLAS ANDRE, Suing on Behalf of Himself and All Other Stockholders of NORTHERN INSURANCE COMPANY OF MOSCOW, Respondent, *v.* JAMES A. BEHA, as Superintendent of Insurance of the State of New York, Appellant, Impleaded with MORTIMER W. BYERS and Others, as Trustees, etc., Respondents, and Others, Defendants.

Second Department, January 26, 1925.

**Corporations — representative action in equity by minority stockholder of Russian insurance company to have money and securities on deposit with State Superintendent of Insurance and held in trust delivered to insurance company or such other person or corporation as court might direct and for determination of rights of parties — company had authority to do business in State — plaintiff was manager in Russia and had power of attorney executed in Russia — only two directors known — judgment awarding money and securities to plaintiff is broader than relief demanded — remedy is under Insurance Law, § 63, or General Corporation Law, § 306, subd. 3 — plaintiff is not entitled to receive money under power of attorney.**

A judgment in a representative action by a minority stockholder of a Russian insurance company, who was manager of the company in Russia prior to his departure after the Soviet *régime* commenced, must be reversed on the ground that it is broader than the relief demanded in the complaint, where it appears that the plaintiff commenced the action in equity to recover the amount deposited with the State Superintendent of Insurance and the amount held in trust by one of the defendants for the purpose of protecting the company's policyholders and creditors in this State, and demanded that the court give judgment directing that the defendants holding said money on deposit surrender and transfer the same to the insurance company or to such other corporation or person as the court might approve and be restrained from paying out or transferring the same to the Soviet government or any agent thereof and that the rights of all the parties to the action be adjudged and declared; and that the judgment actually rendered directed that the money be transferred to the plaintiff as manager of the Russian company upon a receipt given by him and did not declare the rights of the parties.

The fund or balance to the corporation or to the stockholders of the corporation, in case there are no creditors, must be kept under the protection of the court and should not be delivered to the plaintiff, who is not a citizen of this country and who is not directed to give security for the safekeeping of the money.

The remedy under the circumstances, which are that the insurance company has been dissolved legally or illegally by the Russian Soviet government, and that it has ceased to do business in this State and that only two of its directors are known to be in existence, is under section 63 of the Insurance Law which provides an exclusive remedy for the protection of the corporation and its shareholders, or if there is any question as to that remedy proceedings may be instituted under subdivision 3 of section 306 of the General Corporation Law which provides for a suit by the Attorney-General or a creditor or a stockholder, for a receiver to preserve the assets of a defunct or insolvent company.

The plaintiff is not entitled to receive the money by virtue of a power of attorney executed to him while he was the manager of the company in Russia since it appears that the power of attorney was not approved by the stockholders as required by the charter of the corporation and since the power of attorney does not authorize the plaintiff to receive any of the company's property as an individual and to deal with it as he sees fit.

APPEAL by the defendant, James A. Beha, as Superintendent of Insurance, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Kings on the 27th day of August, 1924, upon the report of a referee appointed to hear and determine the issues.

*Edward G. Griffin,* Deputy Attorney-General [*Carl Sherman, Attorney-General,* with him on the brief], for the appellant.

*Paul Bonynge* [*Wendell P. Barker* with him on the brief], for the plaintiff, respondent.

*Mortimer W. Byers,* for the trustees, respondents.

*Herbert Barry* and *Francis O. Affeld, Jr.,* as *amici curiæ.*

MANNING, J.:

The plaintiff brings this action, as he says, " suing on behalf of himself and all other stockholders of Northern Insurance Company of Moscow." He names in his complaint as defendants: Francis R. Stoddard, Jr., as Superintendent of Insurance of the State of New York; Bankers Trust Company, as trustee under deed of trust dated October 7, 1911; Fester & Folsom, Inc.; Emil C. Fester, Basil Fothergill, Carl F. Hartung, Augustus H. Garner and Theodore L. Haff, partners, composing the firm of Fester, Fothergill & Hartung; Northern Insurance Company of Moscow; Boris S. Schwetzoff; Nicholas J. Goutchkoff; and Igor Kistiakovski, Nicholas J. Goutchkoff and Paul A. Bouryschkine, as members of a protective committee of the stockholders of Northern Insurance Company of Moscow.

The plaintiff alleges in his complaint that the defendant the Northern Insurance Company of Moscow was and now is a corporation duly created, organized and existing under the laws of Russia, with a duly authorized, issued and outstanding capital stock of 12,000 shares. He further alleges that he is the owner of 87 shares of the capital stock of the insurance company, and that in the month of October, 1911, the insurance company was duly admitted into and authorized to transact business in the State of New York, and that such business was transacted by the company with the sanction and approval of the Superintendent of Insurance; that before its admission to the transaction of business in the State of New York, the company had deposited with the State

Superintendent of Insurance the sum of $200,000 in cash and securities, and that such deposit was held by the said Superintendent at the time the plaintiff began his action, this deposit being as security for liabilities which might become due to policyholders upon policies issued by the company in the United States. He also alleges in his complaint that in further compliance with the requirements of the Insurance Law of the State of New York, the company had made, executed and delivered to the Bankers Trust Company a deed of trust, which was approved by the Superintendent of Insurance, and that pursuant to the terms of that deed of trust, the company had deposited with the Bankers Trust Company a sum of money exceeding $500,000, which the trust company held under similar conditions to the deposit held by the State Superintendent of Insurance. He also alleged that the total amount of assets belonging to the insurance company held by the Superintendent of Insurance of the State of New York, by the Bankers Trust Company, and by the Superintendent of Insurance of the State of Ohio, amounted to about $844,000; that the total liabilities of the insurance company of every name and nature in the United States did not exceed the sum of $335,000, and that by reason of such situation the insurance company is now and for some time last past has been entitled to withdraw from the custody and possession of the defendant Bankers Trust Company the excess deposited with it under its deed of trust; and also that the company was entitled to withdraw the amount of money on deposit with the Superintendent of Insurance of the State of New York. Plaintiff further alleged that both the defendant Superintendent of Insurance and the defendant Bankers Trust Company, and each of them, had wrongfully denied the title of the insurance company to the securities and moneys so deposited, and that they threaten to transfer and dispose of this money in accordance with alleged requirements of certain claimed edicts or decrees of the so-called Soviet government of Russia, which decrees, the plaintiff alleges, are confiscatory and wholly illegal and invalid, inasmuch as the Soviet government has not been recognized by the United States. The plaintiff further alleged that in or about the year 1918 certain parts of Russia, including the city of Moscow, where the home office of the insurance company was located, came under the domination and control of a so-called Bolshevist or Soviet group or party; that under such *régime* a condition of unparalleled anarchy and terrorism was inaugurated and has ever since prevailed; vast areas have been reduced to starvation and want, countless thousands of people have been summarily put to death without cause or trial, property has been confiscated or destroyed, and corporate enter-

prises have been disrupted or driven into hiding in foreign countries, and the officers and directors thereof exiled, imprisoned or executed. The complaint further alleged that under the charter of the insurance company, the government and management of its affairs are committed to a board, consisting of five regular directors, and two alternate directors to act in the event of a vacancy created by the death, resignation or incapacity of a regular director, and that three directors are necessary to constitute a quorum at any lawful meeting. The plaintiff further alleged that of the five regular directors, and two alternate directors, of the insurance company, who were in office upon the inauguration of the aforesaid Bolshevist or Soviet *régime*, four of the regular directors, including the president of the insurance company, have died or been put to death in Russia, with the exception of one, whose whereabouts are unknown, and who may be either dead or in prison; that the defendant Boris S. Schwetzoff was the fifth regular director, and is now living in exile in Paris, France; that the defendant Nicholas J. Goutchkoff is now living in exile in Paris, France; and that as to the other alternate director, it is not known whether he is living or dead, but if living, he is immured in Russia and wholly inaccessible owing to the absence of diplomatic and mail communications between that country and France, where the remaining directors reside; and that it has been and is and will continue to be impossible for a quorum of said directors, provided one now exists, to communicate with each other, or to meet together, either in Russia or elsewhere, without imminent peril to their lives. He then alleges that before he commenced this action, he duly demanded of the defendants Goutchkoff and Schwetzoff (they being the only officers or directors of the insurance company with whom it was possible to communicate) that they commence and prosecute an action on behalf of the corporation to redress the matters herein complained of; and that said defendants refused and still refuse so to do. And he says that under the circumstances appropriate redress can only be obtained through an action like the present one, and so he asks equitable relief.

The plaintiff further claims that by reason of the premises, and of the wrongful acts of the defendants the Bankers Trust Company and Francis R. Stoddard, Jr., as Superintendent of Insurance of the State of New York, the insurance company and the plaintiff, as well as other stockholders of the insurance company, have suffered and will hereafter continue to suffer irreparable loss, injury and damage, for which there is no adequate remedy at law; that certain of the stockholders of the insurance company are citizens and residents of the State of New York; and the plaintiff, therefore,

prayed, on behalf of himself and all other stockholders of the insurance company similarly situated, judgment as follows:

" 1. That the defendant Bankers Trust Company be required and directed fully to account as Trustee under the aforesaid deed of trust dated October 7, 1911, and thereupon to release, surrender and transfer to the insurance company, or to such other corporation or person as the court may approve, all securities and moneys held by it to the credit of or for account of such trust, or such part of the same as the court may direct.

" 2. That the defendants above named, and each of them, be enjoined, during the pendency of this action and perpetually thereafter, from paying out, transferring, releasing or otherwise disposing of any of the securities, moneys or other assets of the insurance company to the Soviet government or to any agent or agency thereof.

" 3. That the rights of all of the parties to this action and of all other stockholders of the insurance company in the premises be ascertained, adjudged and declared.

" 4. That such determination and decree be made with respect to all deposited securities, moneys and other assets of the insurance company within the State of New York as shall be conformable to equity and the rules and practice of this court."

The Bankers Trust Company appeared by counsel and answered the complaint of the plaintiff. It admitted the deposit with it by the Northern Insurance Company of Moscow of certain securities and moneys, and admitted that it held these securities and cash under the terms of the trust agreement referred to in the complaint. In its answer the defendant Bankers Trust Company set up as a defense that on or about December 1, 1918, under the ordinances and decrees of the Soviet government of Russia, the property of the Northern Insurance Company of Moscow was commandeered, confiscated and taken over by the Russian government. The Bankers Trust Company further alleged that the Northern Insurance Company of Moscow, the corporation which deposited the securities under the deed of trust, had never revoked the agreement or any of the trusts thereby created; and never had demanded payment or delivery to it of any of the money, securities or property held by the Bankers Trust Company, as trustee. And the Bankers Trust Company further alleged that neither the insurance company, nor any person in its behalf, is entitled to demand or to receive the securities, and that the only legal demand that could be made therefor would be by the present Soviet government of Russia; and that so far as that government was concerned, it was without power to institute any suit in the courts of the State of New York. And the Bankers Trust Company

alleged that by reason of the facts set forth in its defense, this court, in equity and good conscience, ought not to enter any decree in this action requiring the trust company to deliver and pay over to the plaintiff, or to any other complainant, any of the securities or accounts now held by the defendant trust company, unless and until the trust company had been adequately indemnified against any subsequent claim that might be made by the Russian government in the event of its future recognition by the United States.

The answer of Francis R. Stoddard, Jr., the State Superintendent of Insurance, admitted the deposits made in his office, and also with the Bankers Trust Company; alleged that the insurance company had ceased the transaction of any business in the State of New York, and further alleged that the Soviet government of Russia, in December, 1918, had promulgated a decree nationalizing all insurance companies and confiscating their property in Russia; and that consequently the insurance company had no legal existence. The Insurance Superintendent in his answer further alleged that he had no desire to retain the excess of securities belonging to the insurance company, over the amount necessary to satisfy all claims of policyholders and creditors of the company in the United States, if, in the judgment of the court, he could properly and legally surrender the same to the plaintiff.

The defendants Kistiakovski, Goutchkoff and Bouryschkine, as members of a so-called protective committee of stockholders of the Northern Insurance Company of Moscow, answered, admitting several of the allegations of the complaint, in practically the same language as the complaint itself. And these defendants, on behalf of themselves and all other stockholders of the insurance company, joined in the prayer of the plaintiff that the rights of all parties to the action, and of all other stockholders of the insurance company, might be ascertained, adjudged and declared.

The defendant Northern Insurance Company itself appeared by an attorney, and interposed an answer to the plaintiff's complaint, alleging " That this defendant at all times mentioned in the complaint was, and now is, a corporation duly organized and existing under the laws of Russia, and since the month of October, 1911, has been duly admitted into and authorized to transact in the State of New York, the business of fire insurance, and that the defendant is entitled to the excess of the amount of its assets within the United States over and above its total liabilities of every kind in the United States, and including those to policy holders and creditors therein." And the company prays for relief as follows: " Wherefore, this defendant joins in the prayer for judg-

ment of the plaintiff herein and asks that upon the accountings and determinations prayed for in the complaint, the proper defendants be directed to pay over to this defendant all sums of money and other property in their hands or in the hands of any of them, and to which this defendant is entitled, and that this defendant have such other and further relief as to the Court may seem proper."

The defendants Schwetzoff and Goutchkoff answered the complaint, admitting the incorporation of the Northern Insurance Company, as alleged in plaintiff's complaint, with an outstanding capital stock of twelve thousand shares. Their answer alleges that Schwetzoff is now and has been for some years the registered owner and holder of eighty shares of the capital stock of the company, and is a regular director thereof; and that the defendant Goutchkoff is now and for many years has been the registered owner and holder of eighty-seven shares of the capital stock of said insurance company, and is an alternate director of said insurance company. Their answer then follows the general allegations of the complaint and they pray for relief as follows:

" Wherefore, these defendants, on behalf of themselves and all other stockholders of the Insurance Company similarly situated, pray judgment as follows:

" 1. That the defendant Bankers Trust Company be required and directed fully to account as trustee under the aforesaid deed of trust dated October 7, 1911, and thereupon to release, surrender and transfer to the Insurance Company, or to such other corporation or person as the Court may approve, all securities and moneys held by it to the credit of or for account of such trust, or such part of the same as the Court may direct.  *  *  *

" 3. That the rights of all of the parties to this action and of all other stockholders of the Insurance Company in the premises be ascertained, adjudged and declared."

After the issues, to which I have made reference, had been joined in the suit, such proceedings were had upon the application of the Bankers Trust Company that it was permitted to resign its trusteeship upon filing its accounts. This was done apparently with the consent of all parties concerned, for on the 24th day of June, 1924, an interlocutory decree was made, whereby the trust company was allowed to resign, and new succeeding trustees were appointed in place of the Bankers Trust Company, which corporation thereupon retired from the case.

The trustees thus appointed thereafter interposed an answer, wherein they denied that they had any knowledge or information sufficient to form a belief as to the various matters set forth in

the plaintiff's complaint; declared that they had taken into their possession, as substituted trustees, the money and securities referred to in the interlocutory decree; and then prayed that the final judgment or decree that might be entered should contain a judicial settlement of their accounts, as substituted trustees, and that in accordance with the law and practice of the court they be released and discharged upon complying with the final judgment or decree.

The order appointing these trustees appears to have been consented to by all the attorneys.

The case being thus ready for trial, it appears that the parties concerned consented in writing that a referee might be appointed to hear and determine the controversy; and this was done, and the hearing before the referee proceeded.

Mr. Andre, the plaintiff, was called as a witness. He testified that he lived in Brooklyn, and he identified a copy of the charter of the Northern Insurance Company of Moscow, which is in evidence and marked as plaintiff's Exhibit 1. Andre testified that he entered the service of the company in 1892 in the capacity of a clerk. In 1900 he was promoted from a clerkship to be chief of the department of transportation, and in 1907 he was elected assistant manager. He says he later became secretary, and in 1915 was elected manager. He had acted as manager for the company for several years before that time. He says the company did business in insurance and reinsurance from fire. He also testified that in 1915 he received a written power of attorney, as assistant manager; and he received another power of attorney, issued in 1918. The powers of attorney were executed in Moscow. He testified that he was a stockholder of the insurance company, and that it had been a stockholding company since the year 1871. The company had been authorized to issue twelve thousand shares, and that this number of shares was outstanding. He said that the number of stockholders in 1914 was from 200 to 300. He bought his own stock in two lots: first, seventy-five shares, and later, twelve shares. The certificates of stock were registered in his name. He was asked where the certificates for the shares were, and he said that he had left them in Moscow, but that he had never sold or transferred them. [He testified that the insurance company was admitted to do business in the State of New York in the year 1911.] He further testified as follows: " Q. Will you state what has been the condition of the company's business for the past five or six years, has it been expanding or contracting? A. No, it did not expand, it gradually declined and the last four months has totally ceased business." He then testified as to a demand being made upon the Bankers Trust Company for " the capital

outstanding in our name, but I received a flat refusal." He said he was in Moscow in the month of November, 1917, and at that time he was the managing director of the company. The company had an office and about 450 employees, and for all practical purposes he was the head of the office and in charge of those employees. He said that the Soviet armies or soldiers, during the latter part of 1917, bombarded the city of Moscow; and they took possession of the city. At that time the president of the company was a man named Gennert, who died; and a man named Naidenoff was elected to take Mr. Gennert's place. He testified that as a general thing the president and directors took no part in the management of the company, and that the witness took charge of the management of the company. He said the directors were to have met regularly every week; but very often they did not meet, and what he called a protocol was sent to them, which they signed. He says that at the time of Gennert's death there was a quorum of directors in the city of Moscow, and that they elected Naidenoff. The witness said that he, Andre, continued in charge of the company's office in Moscow for about a year after the Soviet soldiers came into the city, and towards the end of 1918 the Bolshevists, accompanied by soldiers, came into the office of the company; first of all they caused all employees to leave the place, and then they sealed up the treasury and the whole premises, and the witness was driven out of the place. After the publication of the Soviet decree they allowed the witness to go back, and a liquidator was appointed; the witness and another employee being called upon to assist him. He says: " We liquidated and wound up the affairs of our offices in Sovdevia, that is the term designating the territory where the Soviet rule extended. During the liquidation, in all the rest of Russia the company kept functioning, outside Soviet Russia, in Ukraina and in Siberia, in Archangel and everywhere our offices and agencies continued to work. My own and my assistant's tasks in Moscow was [*sic*] to wind up the affairs in Sovdevia alone." When the Soviet representatives came in they took possession of the treasury — a strong room containing safes, moneys, shares of the company, bonds, etc., and none of the employees of the Northern Insurance Company was allowed access thereto. During that time he had an opportunity to meet many of the shareholders, who had fled earlier and had returned to Moscow. They all were anxious about the state of the company's affairs. The principal shareholders amongst them requested that the witness should go abroad. He tried to go abroad, and finally escaped in 1923, since which time he had not been back, and said it would not be safe to go back. He testified that the last meeting

of the insurance company in Russia was held in Moscow in March, 1917; and at the annual meeting of the shareholders in 1917 there were five regular directors elected: Gennert, Naidenoff, Jaffa, Schwetzoff and St. Shenkoff. And at the same meeting there were two alternate directors elected: Goutchkoff and Kokoreff. He says these five men were in office as directors when the Bolshevists came in. He was asked: " Q. Did the shareholders meet upon the retirement of Gennert and elect a director in his place? A. No. Q. Did one of the alternate directors then step up into Gennert's place? A. Kokoreff. Q. Now then, of the five regular directors that you have named tell me as I call the names of each what became of them or what you know of them. Q. Naidenoff? A. He was shot. Q. By whom? A. By the Tsheka. Q. When was he killed? A. In 1919. Q. Gennert you say died during the bombardment or taking of Moscow? A. Yes. Q. What became of Jaffa? A. He died towards the end of 1919. Q. Were you at his funeral? A. Yes. Q. What became of St. Shenkoff? A. He fled to the Ukraine in 1918. He lived in lower Novotchikska but we don't know what became of him since the capture of Moscow. Q. Where is Schwetzoff? A. He is in Paris. Q. Is he exiled there from Russia? A. He fled from Russia when the Bolshevists were taking Crimea. Q. Now then, of the alternate directors, Kokoreff — what of him and his whereabouts? A. Immediately on the appearance of the Bolshevists he fled to Crimea. They say he is at present in Moscow but correspondence with him is impossible. Q. Have you ever communicated with him or heard from him since then? A. I had indirectly news he was in Moscow. Q. And the second alternate director, Goutchkoff? A. Goutchkoff is the former mayor of Moscow. He also fled before the Bolshevists and is at present in Paris." He also testified that the last meeting of the board of directors of the company to be held in Russia was in the year 1918, and that there had been no meeting since. He testified that there had been no meeting of the shareholders since the year 1918. The witness was asked: " Q. How much stock was outstanding at the time the Soviet government seized the property in Moscow? A. The same amount, twelve thousand shares. Q. You owned eighty-seven shares? A. Yes, eighty-seven. Q. Now, just to help the court here, what interests besides your own do you represent in this suit? A. All stockholders in general. Q. But you claim you own only eighty-seven shares. A. Yes. Q. Have you proxies from any other stockholders? A. No, I consider that as manager, managing director, I can proceed on behalf of the rest. Q. Do you know whether or not any of the stockholders besides the two former directors living in Paris are still

alive? A. Yes. Q. How many are alive that you know of? A. It is difficult for me to say out of three hundred how many are actually alive, but I know some of the principal stockholders are alive, and it is they who asked me to go abroad for this purpose."

The plaintiff called Nicholas P. Federoff as a witness, who testified concerning the state of Russian law in reference to corporations. The witness was asked this question: " Q. Assuming that the evidence in this case shows that this power of attorney was given by the board of directors of the Northern Insurance Company of Moscow in 1918 to its managing director, and that the corporation still has unadministered assets in foreign countries, to wit, in the United States, that the power of attorney has not been revoked and no other managing director has been elected, state whether, under the circumstances, in your opinion in Russian law, this power of attorney is still in force and effect? A. This was issued to the manager unconditionally and the power of attorney is not only in force, but under it the managing director or manager enjoys not only the rights and privileges, but bears also all the responsibilities." The witness further testified that in case the board of directors of a corporation was reduced, by death or otherwise, so that only one director was left, that that one director would have full power to carry on the business. He also testified that a meeting of the directors on foreign soil would be legal. The plaintiff then rested.

Upon this proof, the learned referee has granted a judgment. And he filed a report, wherein he has made certain findings of fact and conclusions of law. His conclusions of law read as follows:

" I. That the defendant Northern Insurance Company of Moscow is entitled to withdraw all of its deposited securities, moneys and other assets in excess of the amount necessary to satisfy the claims of its policy holders and creditors in the United States.

" II. That the defendants Mortimer W. Byers, H. Pushae Williams and Harry W. Kouwenhoven, as Trustees under the aforesaid deed of trust, assign, transfer and pay over unto the Northern Insurance Company of Moscow all securities and moneys now held by them under said deed of trust, and take therefor the receipt of Nicholas Andre, as Managing Director of said Northern Insurance Company of Moscow, after first deducting their reasonable compensation in the sum of Two thousand five hundred Dollars ($2,500) and the costs of this action as hereinafter awarded.

" III. That the Superintendent of Insurance of the State of New York be directed to make, without unnecessary delay, an examination, in due form of law, of the United States Branch of the Northern Insurance Company of Moscow, and that he then release

to said Northern Insurance Company of Moscow, upon the receipt of Nicholas Andre as its Managing Director, such part of its statutory deposit as he may conclude, after such examination, to be in excess of a proper reserve for the claims of American policy holders and creditors, with leave to the several parties to this action to apply to the Court, upon the foot of the judgment to be entered herein, to review such determination of the Superintendent of Insurance if they be so advised.

" IV. That any party may apply to the Court, upon the foot of the judgment to be entered herein, for such further order or judgment as he may be advised.

" V. That the defendants Emil C. Fester, Basil Fothergill, Carl F. Hartung, Augustus H. Garner and Theodore L. Haff, partners, composing the firm of Fester, Fothergill & Hartung, assign, transfer and pay over unto the Northern Insurance Company of Moscow all securities and moneys of said Insurance Company now held or at any time hereafter acquired by them, and take therefor the receipt of Nicholas Andre, as Managing Director of said Northern Insurance Company of Moscow, or otherwise dispose of the same in accordance with the direction of said Insurance Company acting by and through its said Managing Director.

" VI. I direct that final judgment enter herein in conformity with the foregoing, with costs, payable out of the fund, to the plaintiff and to all defendants separately appearing herein, other than the Superintendent of Insurance of the State of New York and the defendant Trustees."

It is from this judgment that the present appeal is taken by the State Superintendent of Insurance. He is alone in the appeal. Notwithstanding that the insurance company itself, and certain of the stockholders, notably those forming the so-called protective committee of stockholders, filed answers in the suit claiming the protection of the court and asking that an accounting be had of the company's property, still they do not appeal from this judgment. Neither did the substituted trustees appeal; but, of course, their situation is a little different, they are merely stakeholders appointed by the court to succeed the Bankers Trust Company, and they throw themselves upon the protection of the court as to whatever form of judgment may be rendered in the action.

The judgment as pronounced by the referee goes far beyond the relief asked for by the plaintiff. His prayer, on his own behalf and on behalf of the other stockholders of the insurance company, was that the Bankers Trust Company and the State Superintendent of Insurance be directed to surrender and transfer " to the Insurance Company, or to such other corporation or person as the Court

may approve, all securities," etc., and that the defendants be restrained from paying out or transferring those securities " to the Soviet government or to any agent or agency thereof;" also, " That the rights of all of the parties to this action and of all other stockholders of the Insurance Company in the premises be ascertained, adjudged and declared;" and " That such determination and decree be made with respect to all deposited securities, moneys and other assets of the Insurance Company within the State of New York as shall be conformable to equity and the rules and practice of this Court."

Surely, even a casual examination of the plaintiff's complaint will disclose that there is in it no statement or suggestion on his behalf whereby he claims that the funds deposited by the company in the State of New York should be turned over to him individually, upon his receipt or voucher; but that is just what has been done by the judgment in this case. What possible security the hundreds of stockholders, of whom we know nothing, and who are not before the court at all, can have if this money is turned over to the plaintiff, is beyond my conception. And it seems to me that basically the judgment of the learned referee is erroneous, and that no such judgment as this should be permitted to stand. This very large sum of money, amounting to nearly $600,000, is now safely on deposit where the decrees or judgments of this court can reach it; and it is only through the instrumentality of our courts that this money can be disturbed. According to the evidence in the case, the company has practically no liabilities; and if this be so, the money belongs to the stockholders, wherever they may be, here or in Russia; hence it seems to me that this court should not lend itself to any procedure which would take this large sum of money from the stockholders, and intrust it to the plaintiff or any one else not clearly entitled thereto. The plaintiff is not permanently located in this country, neither is he a citizen thereof. As I view the situation as disclosed by the undisputed evidence in this case, the Northern Insurance Company of Moscow no longer exists; it was destroyed, legally or illegally, in Russia, the place of its birth. It is perfectly true that having complied with the laws of our State, it received permission to transact business here when it was a going concern in Russia. And the proof shows that since its sequestration by the Russian Soviet government the company has not functioned at all, even in the State of New York; it has not reinsured any of its risks; all that has been done by its agents here has been a gradual liquidation of its outstanding treaties or contracts. And the fund which was deposited here during the active life of the corporation is still here, and belongs

to its creditors, or to its stockholders in the event of there being no creditors, wherever those stockholders may reside. Even the certificate which authorizes it to do business in the State of New York will expire on May 1, 1925.

It will be observed from the nature of the trial had before the referee that substantially the only testimony offered in support of the plaintiff's claim and the judgment rendered herein, is the story of the plaintiff. And if we give to this story all the force and verity claimed for it, I cannot see any justification for the sanction by this court of the judgment granted by the referee, the effect of which is to pay over to the plaintiff the entire assets of the Northern Insurance Company in the State of New York, the corporation of which he claims to be a director, and wherein the proof shows he holds only 87 out of 12,000 of its shares of capital stock. The relief prayed for by Andre in his complaint, and also by several of the defendants who appeared, including the corporation itself, is " That the rights of all of the parties to this action and of all other stockholders of the Insurance Company in the premises be ascertained, adjudged and declared." Nothing of this kind has been done, however. The judgment does not declare or ascertain the rights of any one, save that of the plaintiff, and he, by the provisions of this judgment, is declared to be entitled to receive the sum of nearly $600,000, which clearly does not belong to him, but does belong to the stockholders of the defunct corporation, the Northern Insurance Company of Moscow. No protection whatsoever is given to the other stockholders' rights; and plaintiff, a minority stockholder, is, by the judgment, made a custodian or practical receiver of the corporate property, without any security to insure a proper liquidation of the company's assets for the benefit of those clearly entitled thereto. The referee's views upon this part of the controversy can best be gathered from his opinion, wherein he says:

" It is a self-evident legal proposition that the corporate entity must be either dead or alive, for the law recognizes no such thing as a twilight zone between the two. If the corporation is dead, its assets belong to the stockholders and distribution in some form should be made to them as the ultimate beneficiaries, whereas, if it is alive, transfer and payment should be made to its duly accredited representatives. In neither case can appropriate relief be withheld. There is nothing in this record, however, upon which the court would be justified in finding that corporate death has ensued. Under our law a corporation survives notwithstanding the fact that some or all of its officers or directors may have died or become incapacitated, and the uncontradicted testimony of

Judge Federoff shows that the same principle prevailed under the only Russian law to which this court can lend countenance. In 1918 the Northern Insurance Company, in accordance with the familiar practice of continental corporations, executed a broad power of attorney to Nicholas Andre as its managing director, and the proof satisfies me that this power of attorney has never been revoked and that it is, as a matter of law, both Russian and American, still in force and effect. This view is confirmed by the solemn declaration of the defendants Goutchkoff and Schwetzoff, the only functioning directors of the company. (Plaintiff's Exhibit 23.) It follows that any assignment or payment made to Mr. Andre on behalf of the Northern Insurance Company will fully discharge and protect the person or official who takes his receipt. All of the stockholders now before the Court concede the authority of Mr. Andre and as this is a representative action, any absentee stockholders will be bound by representation."

I confess my inability to follow the reasoning of the learned referee in his statement which I have just quoted. The undisputed evidence in this case, according to Andre himself, is that the company's property was destroyed and sequestrated by the Soviet government in 1918. Whether we can regard such seizure as legal or illegal, the fact remains that the company was destroyed by a de facto government then and still in power in the country which gave this corporation its birth. It never had birth or legal sanction to exist in this country at all. It did have a license to carry on business here, as a foreign corporation, upon compliance with our laws applicable to such a situation. These laws required that the very cash and securities which Andre now seeks should be deposited here as a protection to creditors and policyholders; and these deposits are now here, safely on deposit in accordance with the law. To allow them to be taken out by the plaintiff in the peculiar action sought to be maintained by him here, without any security or protection to the owners of the property, whether they be policyholders, creditors or stockholders, would seem to be a travesty on justice. The only stockholders who joined in his application are the two referred to, Goutchkoff and Schwetzoff, and they are in the same situation as Andre himself. We have not before us the other stockholders in this corporation, of which there must necessarily be a large number; yet the learned referee says in his opinion that " All of the stockholders now before the Court concede the authority of Mr. Andre and as this is a representative action, any absentee stockholders will be bound by representation."

In this appeal the judgment rendered below is questioned by

the Attorney-General only, on behalf of the Superintendent of Insurance.

All the other defendants who also answered and craved the protection of the court seem to have assumed a quiescent attitude, and do not now appear as at all anxious that their rights and interests as stockholders be ascertained, adjudged and declared, as prayed for in their answers. This applies to the insurance company itself.

The Attorney-General, in his first point, argues that the proper procedure in this case calls for action on the part of the Superintendent of Insurance under section 63 of the Insurance Law, which, he says, provides an exclusive remedy for the protection of the corporation and its shareholders.

The plaintiff claims that this section has no application to a solvent company, which, he says, is the case here. I cannot agree with the learned counsel for the plaintiff in his narrow view of the section. It is not only insolvency that is made the basis for action on the part of the Superintendent, but under the section he may act where the company is found, after an examination, to be in such a condition that " its further transaction of business will be hazardous to its policyholders, or to its creditors, or to the public." (See Insurance Law, § 63, added by Laws of 1909, chap. 300, as amd. by Laws of 1912, chap. 217; Laws of 1913, chap. 29; Laws of 1918, chap. 119, and Laws of 1922, chap. 69.)

In construing this very section of the law, the Court of Appeals in a recent case (*Matter of People* [*City Eq. Fire Ins. Co.*], 238 N. Y. 147, 156) said: " The Superintendent is not, therefore, to take possession of the property solely for the benefit of creditors or policyholders in this State or in the United States but for the interest of all its policyholders, creditors and stockholders wherever they may be." Surely, when we consider the facts surrounding the Northern Insurance Company of Moscow, as shown by the proof in the case before us, it does seem that a proper way to conserve the assets of this corporation in the interest of its stockholders, who are unknown, and who are not before us, would be to liquidate the corporation by due process of law, namely, under the direction of the State Superintendent of Insurance. If there is any question about this phase of the controversy, there is still another method whereby the corporate property of the company can be conserved; and that is, by resorting to section 306, subdivision 3, of the General Corporation Law, which provides for the appointment of a receiver of the corporation's property in a suit brought by the Attorney-General, or by a stockholder, to preserve the assets of a defunct or insolvent company. The courts of this State

will always assume jurisdiction of the assets of a foreign corporation to protect and conserve its assets. (See *Mitchell* v. *Banco De Londres y Mexico,* 192 App. Div. 720.)

The plaintiff answers this contention of the appellant by saying that the case is not a proper one for a receiver; that the company is admittedly solvent; there is no dissension among its officers; no misconduct; on the contrary, he says, the stockholders, directors and officers are wholly united in their desires. This statement is rather astonishing, when the proof shows that there are no officers, nor even a board of directors, nor a quorum thereof; and the only stockholders present are Andre and his friends, who own a few shares of the company's stock, less than 1,600 shares out of 12,000. Plaintiff himself admitted that he held only 87 shares, and that he did not hold any proxies from other stockholders, though he claimed to represent them. He could not swear how many of the stockholders were actually living; he knew some of them were, and it was these few who asked him to go abroad and represent them. Asserting that the corporation still lives, the plaintiff's counsel says that the appointment of a receiver would be quite as grave an abuse of discretion as any attempted liquidation of the company by the Superintendent of Insurance. He claims that even though the number of directors has been reduced to less than a quorum, and that only a single officer remains, still a receiver could not be appointed. He cites certain cases, which, he argues, support his contention. They are: *Ehret* v. *Ringler Co.* (144 App. Div. 480) and *Zeltner* v. *Zeltner Brewing Co.* (174 N. Y. 247). The cases are not in point, however, and furnish no authority therefor. *Zeltner* v. *Zeltner Brewing Co.* (*supra*) was a case where the entire board of directors resigned for the express purpose of having a receiver appointed, and the court refused to sanction such a proceeding on their part. *Ehret* v. *Ringler Co.* (*supra*) was a case where three of the directors had been ousted by the court, and there were two remaining directors duly qualified to act, one of whom, its vice-president, was, by the by-laws, given all the powers of the president who had been ousted. This had to do with a domestic corporation, and the court, adopting the language of the *Zeltner* case, when it was before our court (79 App. Div. 136, 139), said: " In the case of a domestic corporation it is difficult to see how the subdivision could apply unless upon the sudden physical incapacity or decease of all the directors in office." These cases have to do with domestic corporations discharging their corporate functions; not with a corporation which has been destroyed in the country which gave it birth; or with a corporation which was permitted to do business in the State of New York, but which.

the proof shows has ceased to do any business for several years past. The proof here is that this insurance company has been in a state of gradual liquidation by its attorneys in fact, and that at the present time it has only one reinsurance contract or treaty outstanding.

The counsel for the plaintiff, in his brief, argues that plaintiff's authority to act for the company is not open to successful challenge, and that under it he has a right to the moneys on deposit by virtue thereof; and hence, he claims, that the number of stockholders, or their holdings, is not material in the case at all. This claim, of course, is much broader than the plaintiff's sworn complaint, and his prayer for judgment contained therein. All he asked for there was that defendants be required to account; that they be restrained from paying the money to the Soviet government pending the action, and finally " That the rights of all of the parties to this action and of all other stockholders of the Insurance Company in the premises be ascertained, adjudged and declared." He did not claim the funds; but the judgment gives the funds to him. And still we are asked to affirm this judgment.

His alleged power of attorney is the basis for his technical claim to the funds in controversy. Regarding this document, a careful reading of it discloses that it apparently gives to Andre powers more comprehensive and extensive than the board of directors possessed under the company's charter. This charter provides that a written definition of powers given to a general manager must be approved by a general meeting of stockholders (§ 25, charter). This power of attorney was never so approved; and there is no pretense or claim that it was. It was executed in Moscow, in January, 1918, while the plaintiff was in that city as manager of the company. It may properly be construed as evidence of his authority then and in that country; but is it reasonable to suppose that it was ever intended to be in force and effect in America more than five years after the company was destroyed by the Soviet government of Russia and its property confiscated? As I read the power of attorney, it appears that the plaintiff never became entitled to any of the company's property, as an individual, to deal with as he sees fit; but that is what he is claiming here. I take it that our courts will not aid him in such an undertaking. Plaintiff's claim to the possession of these funds pursuant to his power of attorney has been recognized by the judgment appealed from, and his receipt is all that is required. What he is to do with the money is not stated; so he may do with it as he pleases, and his counsel argues that we have no right to inquire. Yet, in his brief he states that " The whole purpose of the action is to procure a release of the reserves and deposits of the Northern Insurance Company of

Moscow so as to admit of its incorporation as an insurance company under the laws of New York." But nowhere in the judgment, findings or report of the referee, nor in the plaintiff's testimony, is there a word or provision regarding the subject-matter of incorporating the company under the laws of the State of New York. If this be so, why was there not some provision made to safeguard the rights of stockholders?

Since the object of this action was to procure equitable relief in the nature of an adjustment of the rights of stockholders and the protection of their interests, and this not having been accomplished by the judgment, it seems to me that this judgment should not be permitted to stand. The plaintiff's position here now seems to be entirely based upon his so-called power of attorney, but as I read the instrument under which he claims to be entitled to the company's money I am of the opinion that he is not entitled to the rights which he attempts to assert nor to the judgment which was granted to him by the learned referee, and I conclude, therefore, that his complaint should be dismissed.

A great portion of the very learned and instructive brief of the plaintiff's counsel is taken up with the question as to the corporate status of the Northern Insurance Company of Moscow and the effect upon the company by the decrees, so called, of the Soviet government of Russia. He has called our attention to a large number of cases where the effect to be given to these decrees has been passed upon in one way or another by courts in this country and also in England. These cases, however, are not at all analogous to the case under examination here in which the plaintiff appears. Most of them are actions begun by the several insurance companies against various defendants, and many other cases are those of creditors against Russian insurance companies; many of them have to do with pleadings and intermediate motions in those several actions. The particular case before us presents the question as to whether an individual stockholder, and a minority one at that, can come into the courts of our State upon an alleged power of attorney and attempt to get possession of the entire assets of a Russian insurance corporation under the guise of a so-called stockholder's action, and procure a judgment which in effect turns over the property of the company to the individual stockholder without any security or protection to others similarly situated. I do not think the plaintiff has made out a case which entitles him to such a judgment or entitles him to any equitable relief upon the record presented here.

I, therefore, recommend that the judgment be reversed upon the law and the facts and the complaint dismissed, with costs. All find-

ings of fact and conclusions of law made in this case by the referee inconsistent with the decision herein made should be reversed.

KELLY, P. J., RICH, JAYCOX and KAPPER, JJ., concur.

Judgment reversed upon the law and the facts, and complaint unanimously dismissed, with costs. All findings of fact and conclusions of law made in this case by the referee inconsistent with the decision herein made are reversed.