Severnoe Securities Corporation, Respondent, *v.* Westminster Bank, Limited, Appellant.

Second Department, June 19, 1925.

Corporations — foreign corporations — action on claim by Russian insurance company alleged to have been assigned to plaintiff, domestic corporation, by general manager or managing director — power of attorney under which general manager acted was executed in Russia in 1918 and did not confer power to make assignment — assignor had ceased to function long before alleged assignment was made — assignment is invalid.

The assignment to the plaintiff, a domestic corporation, on which this action is based purporting to have been made by the general manager or managing

director of the Northern Insurance Company of Moscow, is invalid and confers no rights on plaintiff, since it appears that the managing director, who is a resident of this State, made the assignment under an alleged power of attorney executed by the insurance company in Russia in 1918; that the said power of attorney does not confer authority on the managing director to assign the claim, and that the Russian corporation ceased to function in Russia long before the assignment was made, through the action of the so-called Russian government, which has not been recognized by the United States, in sequestrating all the property of the insurance company and nationalizing its business.

APPEAL by the defendant, Westminster Bank, Limited, appearing specially, from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Kings on the 13th day of January, 1925, denying its motion to vacate a warrant of attachment.

*Paul Kieffer*, appearing specially, for the appellant.

*Paul Bonynge*, for the respondent.

KAPPER, J.:

An attachment has been granted requiring the sheriff of the county of New York to take into his possession the sum of $68,106, the funds of the defendant in said county. The defendant is a British banking corporation, and the action is brought for the alleged conversion by the defendant of certain bonds having an alleged value of the amount specified in the attachment. It is further claimed that these bonds were the property of the Northern Insurance Company of Moscow, a corporation created under the laws of Russia. It is further alleged that plaintiff, *since* March 3, 1924, was and is a domestic corporation, and that on or about April 29, 1924, the said Northern Insurance Company " duly assigned to this plaintiff its said claim for damages for said conversion."

The defendant moved to vacate the warrant of attachment on two grounds: " *First*, that no cause of action exists in favor of the plaintiff or its assignor against the defendant, and *secondly*, this court will not entertain jurisdiction of the alleged cause of action, if any should exist." The second ground upon which the attachment is sought to be vacated is, in substance, that the plaintiff was incorporated solely for the purpose of taking over the assignment of this alleged claim and that, therefore, the plaintiff is not a *bona fide* domestic corporation within the meaning of section 46 of the General Corporation Law (as added by Laws of 1920, chap. 916; formerly Code Civ. Proc. § 1780, 1st sentence), which authorizes the maintenance of an action against a foreign corporation by a resident of the State or by a domestic corporation. It was held in *McCauley* v. *Georgia Railroad Bank* (122 Misc. 632; affd., 209 App. Div. 886; affd., 239 N. Y. 514) that an assignment

of a claim may be made by a foreign corporation to a resident of the State even though the assignment is made solely to enable the action to be brought here, whether the assignor could or could not bring it himself. I do not think it necessary to inquire into the status of the plaintiff corporation, as the case, in my opinion, turns upon a broader proposition, namely, whether there ever was an assignment of the alleged claim of the Northern Insurance Company of Moscow to the plaintiff corporation; and this embraces the status, or the lack of it, of the alleged assignor.

The plaintiff's certificate of incorporation names five directors, amongst them one Nicholas Andre, three of the four remaining names being persons associated with the attorneys for the plaintiff in this action.. The assignment was made by Andre, who claims to be *at the present time* the " general manager or managing director " of the Northern Insurance Company of Moscow which he says was chartered under the laws of Russia in 1879, and in the employ of which he claims to have been ever since 1892. True, he says that the assignment was made " by the authority and direction of the directors of the Northern Insurance Company of Moscow," but, in view of our familiarity with the recent history of this same insurance company and Mr. Andre's connection therewith (*Andre* v. *Beha*, 211 App. Div. 380), we are free to hold that this " authority and direction of the directors " is predicated solely upon a power of attorney made January 19, 1918, and which Mr. Andre has annexed to his affidavit in opposition to this motion.

In the case cited (*Andre* v. *Beha, supra*) Andre sued " on behalf of himself and all other stockholders of Northern Insurance Company of Moscow " to obtain possession for the benefit of the insurance company and its stockholders of certain funds on deposit in bank and in the hands of the State Superintendent of Insurance placed there by the insurance company. We denied his right to maintain this action, and of this same power of attorney we said (per· MANNING, J., p. 397): " His alleged power of attorney is the basis for his technical claim to the funds in controversy. Regarding this document, a careful reading of it discloses that it apparently gives to Andre powers more comprehensive and extensive than the board of directors possessed under the company's charter. This charter provides that a written definition of powers given to a general manager must be approved by a general meeting of stockholders (§ 25, charter). This power of attorney was never so approved; and there is no pretense or claim that it was. It was executed in Moscow, in January, 1918, while the plaintiff was in that city as manager of the company. It may properly be construed as evidence of his authority then and in that country; but

is it reasonable to suppose that it was ever intended to be in force and effect in America more than five years after the company was destroyed by the Soviet government of Russia and its property confiscated? "

Our judgment was affirmed by the Court of Appeals. (240 N. Y. 605.) That court held that plaintiff Andre " as managing director for Northern Insurance Company of Moscow is not the real party in interest and may not maintain this action as such; " and that he had further failed to make out a cause of action as a stockholder suing in a representative capacity. Respondent might possibly argue that, had the suit been brought by the insurance company instead of by Andre, the right to sue might have been upheld. But that view cannot prevail in the light of the decision in the case of *Russian Reinsurance Co.* v. *Stoddard* (240 N. Y. 149). There the action was brought to recover certain funds and securities which the plaintiff company, a Russian corporation, had previously deposited as its American capital with the defendant Bankers Trust Company, under a trust agreement for the protection of the United States policyholders and creditors of the plaintiff company. It was shown that the insurance company had ceased to transact business in the United States and had paid practically all of its obligations to its United States policyholders and creditors; wherefore it sought the return to it of its funds and securities in the hands of the defendant trust company. The Appellate Division (211 App. Div. 132) held the plaintiff company to be " in existence; " that it was " not disqualified to bring suit in the courts of this State; " and that it was " the real party in interest to bring this suit." The Court of Appeals reversed the judgment. In the opinion of the court, Judge LEHMAN writing, it was emphatically pointed out that the events occurring in Russia since the fall of the government of the Czar in 1917 *which are within the common knowledge of the people of this country,* rendered it impossible for our courts to assume jurisdiction of the action, those events establishing that the plaintiff insurance company " has been actually prevented from conducting its corporate business in the country of its domicile, its property there has been sequestrated, its business nationalized, and it has been driven out, if it is possible that a corporation may be driven out from its domicile, and yet maintain its life."

The opinion (p. 160) further states: " Greater difficulties are presented by the question of whether the directors of a corporation still have power to represent the corporation, when for a long period conditions have made it impossible for the corporation to

2

function in its domicile or to hold meetings of shareholders who have the final right to determine all the details of the corporate affairs and to give directions to the board of directors. The directors are merely the agents of the corporation, and when circumstances have changed, to such extent the conditions under which that agency was to be exercised and have rendered inoperative the checks and limitations provided in the charter; have made impossible the revocation of the agency or the substitution of new agents, we may question whether that agency continues in full force and vigor after the lapse of years."

Judge LEHMAN, after discussing the possibility of a second recovery upon the same cause of action and the presentation of such a claim to our own courts which he thought remote, propounded this question: " May we regard as similarly remote the possibility of such a second recovery in the courts of a foreign nation? " which he answered as follows: " Our inability to protect by our judgment this defendant against a second recovery upon the same cause of action presents a strong consideration against assuming jurisdiction of this action. (*Mahr* v. *Norwich Union Fire Insurance Society*, 127 N. Y. 452.) The corporation is deprived of no substantial right or benefit if our courts refuse to entertain jurisdiction of an action brought by it until the time comes when a government which we recognize rules the country of plaintiff's corporate domicile, or at least until the plaintiff corporation is able to re-establish its existence in that domicile, and the machinery provided by its charter for the management of its affairs is again functioning. If it is urged that by so doing we may enable the Soviet government in case of recognition by the State Department to assert here an unjust claim based upon confiscation, the answer is that the responsibility rests upon that branch of our government to determine in the first instance whether and upon what terms the Soviet government should hereafter be recognized and the courts will then determine, subject to any rights granted by treaty, whether they will enforce any claim asserted by that government. To the extent that until that time the courts should not take jurisdiction of this equitable cause of action, both justice and common sense require us to give effect to the conditions existing in Russia, though those conditions are created by a force which we are not ready to acknowledge as entitled to recognition as a state or government." (pp. 168, 169.)

Undoubtedly, the inability, by the court's judgment, to protect the defendant trust company, was one of the potential reasons for that decision. But, as leading to this conclusion, the recognition by the Court of Appeals of the fact that the insurance company

was not functioning because its activities had been paralyzed by those purporting to govern its home country, is of persuasive and convincing force upon the merits of this appeal. Of course, the difficulty of protecting a New York corporation against a double liability in the courts of our own State, is obviously increased in the case of a British bank, not doing business in this State. It is shown here on behalf of the appellant bank that it has no desire to withhold these bonds from a claim by the proper owner. It asserts its present ability and willingness to return the bonds and accrued interest " in exchange for a valid discharge or a proper indemnity," but that " it has no information as to who is entitled to the bonds and neither a discharge nor indemnity has ever been offered."

Amongst the European governments which have recognized the Soviet government of Russia is Great Britain. It is urged by the respondent that a recent decision of the House of Lords (*Russian Commercial & Industrial Bank* v. *Comptoir D'Escompte de Mulhouse,* L. R. [1925] A. C. 112; 93 L. J. K. B. 1098; 40 T. L. R. 837) holds that the British courts will recognize the right of a Russian corporation to sue in its courts. But that proceeded upon the distinct theory that the corporation bank had not been destroyed by the edicts or decrees of the Soviet government. The evidence showed that as to banks, such was regarded to be the effect of the Soviet decrees. That may in England be so as to Russian banks but, in so far as the record here shows, containing the view of the United States Department of State, all Russian insurance companies were destroyed by the Soviet government and their properties confiscated. If that situation be recognized in England plus the further recognition by the British government of the *de facto* character of the Soviet government of Russia, it is exceedingly difficult to say here and now that a suit will not lie in England by and on behalf of the Soviet government against this defendant for the very moneys which have now been attached solely to enable the plaintiff to proceed to judgment in our courts. Or let us assume, however improbable it may seem to students of political history, that the Soviet government shall recognize the Northern Insurance Company of Moscow as a continuing and existent corporation. What shall prevent this insurance company, in that event, from proceeding in the courts of England to obtain the value of the bonds which are said to be in the possession of the defendant? May it not there be heard to say that Andre's authority had long since ceased and that he, with an ownership of a comparatively small amount of stock, conceived the scheme of incorporating a New York com-

pany to become an assignee in name only under a purported assignment from him made under the pretense that he was acting for the insurance company, whereby this fund in New York belonging to the defendant bank might under form of law be appropriated to those in no manner entitled to it? When we consider that this Northern Insurance Company of Moscow is not functioning as a corporate being at all, its property in Russia having been " sequestrated [and] its business nationalized," Andre's purported right to assign the insurance company's claim must be denied. The power of attorney under which he claimed the right to. make the assignment, given to him in 1918, should not be regarded as continuing to the present time because, as we held in *Andre* v. *Beha* (*supra*), the insurance company had been so affected by the occurrences in Russia as to make impossible the location of a majority of its board of directors or of any considerable number of its stockholders, and for the additional reason that the destruction of the company and the confiscation of its property by the Soviet government would not permit us to regard it as now functioning here at all. As Judge LEHMAN pointed out, the continuation of a corporate agency after all of these untoward events may well be questioned by the courts.

An assignment is complete only when the assignor " is divested of all control and right to the cause of action, and the latter [assignee] is entitled to control it and receive its fruits." (*Spencer* v. *Standard C. & M. Corp.*, 237 N. Y. 479, 480.) And as was said in *Wulfsohn*. v. *Russian Republic* (234 N. Y. 372, 377): " If the complaint and the affidavits upon which the warrant of attachment was based in the case before us clearly indicate that the plaintiffs must ultimately fail the warrant should be vacated. It does so appear in this case."

In my opinion there never was an assignment which we should recognize of the rights of the Northern Insurance Company of Moscow against the defendant to the plaintiff corporation, and for that reason, the order appealed from should be reversed on the law and the facts, with ten dollars costs and disbursements, and the motion to vacate the warrant of attachment granted, with ten dollars costs.

KELLY, P. J., JAYCOX, MANNING and KELBY, JJ., concur.

Order reversed on the law and the facts, with ten dollars costs and disbursements, and motion to vacate the warrant of attachment granted, with ten dollars costs.