In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by JAMES A. BEHA, Superintendent of Insurance of the State of New York, Appellant, for an Order to Take Possession of the Property and Conserve the Assets for the Benefit of the Creditors of the SECOND RUSSIAN INSURANCE COMPANY, Respondent, and the Interests of Its Policyholders, Creditors, Stockholders and the Public.*

First Department, December 28, 1928.

* Revd., 250 N. Y. 449.

*Chester B. McLaughlin* of counsel [*Clarence C. Fowler*, attorney], for the appellant.

*Robert J. Sykes* of counsel [*Paul Bonynge* and *William H. Harding* with him on the brief; *Bonynge & Barker*, attorneys], for the respondent.

MARTIN, J. The Second Russian Insurance Company in November, 1927, applied to the court under section 63 of the Insurance Law (as amd. by Laws of 1922, chap. 69) for permission to take the surplus assets then in the hands of the Superintendent of Insurance as liquidator. He immediately countered that the petitioner was non-existent, challenging the authority of the attorneys who purported to represent it. At the Special Term an order was entered upholding their authority.

The Deputy Superintendent of Insurance also moved to strike out certain allegations in the replying affidavit upon which the order had been made, seeking to expunge from the record certain words as " scandalous and impertinent." That motion was denied. An appeal has been taken from both orders.

The Special Term decided not only that the attorneys had a right to appear but also that they were entitled to a transfer of the assets of the company. We are of the opinion that no such authority has been established and that the decision to the contrary was erroneous.

The alleged retainer by the Second Russian Insurance Company dated and verified October 25, 1927, purports to have been signed on behalf of the company by " A. DeSevaux, Director, M. Miller,

Director, S. Savitch, Director." It was apparently verified by the alleged directors before the United States Consul at Paris, France.

In the case of *Russian Reinsurance Company* v. *Stoddard* (240 N. Y. 149) the Court of Appeals said that we must look to the charter to find the authority of these men. The charter provides that the business is to be managed by the board of directors and by the general meeting of shareholders to be held in March of each year in St. Petersburg. No general meeting of the shareholders has been held since 1917, more than ten years prior to the date of the alleged retainer. It further provides that the board of directors is to consist of six members, elected by the general meeting of the shareholders, to hold office for a period of six years, and the presence of at least three members of the board is made necessary for a valid meeting. The term of the officers and directors was six years, and by article 2177, volume 10, part I of the Civil Code of General Laws of Russia, a director was forbidden to thereafter hold such office. The power of the directors was very much limited by the charter.

After the Soviet government obtained control three of the members of the board left Petrograd for South Russia. Three other members later left Russia and attempted to set up an office at Christiania, Norway, assuming to establish a general headquarters of the board of directors. One member, Savitch, testified that the home office of the company and all its contents and property were seized in 1918 and that the only thing taken out of Russia was his power of attorney.

Some of the directors of these companies have given assignments which have been held invalid. Such an assignment was under consideration in the case of *Severnoe Securities Corporation* v. *Westminster Bank* (214 App. Div. 14). The history of the Severnoe Securities Corporation and its activities are referred to at length in the record and is a very interesting chapter in the liquidation of these insurance companies.

In *Russian Reinsurance Company* v. *Stoddard* (*supra*), where a similar question was under consideration, the court said: " The plaintiff if it exists at all is an artificial entity, a creature of statute, an abstraction rather than an actuality. It is in fact without existence in Russia which has given it birth; it may be in law nonexistent in the countries which have recognized the Soviet Republic. It exists here solely by force of the juridical conception which we have pointed out should not be carried beyond the limits of common sense and justice. In testing a result by standards of common sense and justice we may look beyond all fictions to the facts behind them. At the present time this exiled corporation, unable

to function in Russia, unable to hold stockholders' meetings, can function if at all only through its directors, acting as its agents. A judgment in this action in favor of the plaintiff is in effect a judgment directing delivery of the moneys to these directors by the present custodians. * * * Though this property in form belongs to the corporation, in fact, if it has not been confiscated, the policyholders, creditors and shareholders are eventually entitled to it. Certainly it does not belong to the directors to do with as they will. The directors may not distribute these moneys in liquidation, for under the express provision of the charter, liquidation if ordered must be carried out by other officers."

Mr. Justice MANNING, in *Andre* v. *Beha* (211 App. Div. 380) wrote a very clear opinion on the subject and appears to have covered the questions here involved. He said: "What possible security the hundreds of stockholders, of whom we know nothing, and who are not before the court at all, can have if this money is turned over to the plaintiff, is beyond my conception. And it seems to me that basically the judgment of the learned referee is erroneous, and that no such judgment as this should be permitted to stand. This very large sum of money, amounting to nearly $600,000, is now safely on deposit where the decrees or judgments of this court can reach it; and it is only through the instrumentality of our courts that this money can be disturbed. According to the evidence in the case, the company has practically no liabilities; and if this be so, the money belongs to the stockholders, wherever they may be, here or in Russia; hence it seems to me that this court should not lend itself to any procedure which would take this large sum of money from the stockholders, and intrust it to the plaintiff or any one else not clearly entitled thereto. * * *

"The only stockholders who joined in his application are the two referred to, Goutchkoff and Schwetzoff, and they are in the same situation as Andre himself. We have not before us the other stockholders in this corporation, of which there must necessarily be a large number; yet the learned referee says in his opinion that 'All of the stockholders now before the court concede the authority of Mr. Andre and as this is a representative action, any absentee stockholders will be bound by representation.' "

Speaking of the alleged power of attorney (at p. 397) he further said: " His alleged power of attorney is the basis for his technical claim to the funds in controversy. Regarding this document, a careful reading of it discloses that it apparently gives to Andre powers more comprehensive and extensive than the board of directors possessed under the company's charter. This charter provides that a written definition of powers given to a general manager must

be approved by a general meeting of stockholders (§ 25, charter). This power of attorney was never so approved; and there is no pretense or claim that; it was. It was executed in Moscow, in January, 1918, while the plaintiff was in that city as manager of the company. It may properly be construed as evidence of his authority then and in that country; but is it reasonable to suppose that it was ever intended to be in force and effect in America more than five years after the company was destroyed by the Soviet government of Russia and its property confiscated? "

If these funds belong to the stockholders, three directors whose terms of office must have expired, who, in any event, have shown no authority to receive the assets of the corporation, should not be given an order of the court directing that the assets be paid to them. As pointed out by Mr. Justice MANNING, the funds are safe where they are at the present time and it would be unwise to take them from the State of New York to give them to these alleged directors without any protection to the stockholders or other persons in interest.

The State of New York may be entitled to hold these funds until the State Department has finally settled the question of recognition. It is not likely they will be paid to a government that has already confiscated millions of dollars belonging to American citizens.

A very striking example of how the funds might be distributed is shown by the record. The testimony and Exhibit 6 are most interesting in explanation of the method followed in distributing the $76,128.84 received in the *Westminster Bank* case.

We are of the opinion, therefore, that no authority has been shown to warrant the transfer of these funds from the custody of the State of New York. Although appearances have been held sufficient in some cases in order to protect the rights of all parties in interest, it does not follow that the so-called directors should be given the funds of stockholders when the right to receive them has not been satisfactorily established.

The order which denied the motion to strike out as scandalous certain allegations in the affidavit should also be reversed. The statements sought to be eliminated are unnecessary for a determination of the matters involved and are unwarranted.

It is also stated that the motion was withdrawn and it is, therefore, unnecessary to decide the questions submitted on these appeals.

The simple expedient of withdrawing the motion after it has been favorably decided may not be successfully resorted to in order to prevent a decision on appeal of the important questions involved in this litigation.

The orders should be reversed with ten dollars costs and dis-

bursements, and the relief sought by the Superintendent of Insurance granted.

Dowling, P. J., and McAvoy, J., concur; Finch and O'Malley, JJ., dissent.

O'Malley, J. (dissenting). I agree that the order denying the motion to strike out the scandalous affidavit should be reversed and the motion granted, but otherwise dissent. The proceeding in which, by this motion, it was sought to compel the attorneys for the moving parties to show their authority, has been withdrawn on consent. The question of authority to institute the proceeding is, therefore, academic. Moreover, the only effect of the order appealed from was to hold that sufficient authority to *make* application had been shown. In no view could it be construed as conferring the right to receive the funds involved. As I read the majority opinion, its effect is to preclude the petitioners from hereafter making application of any character, even though such application might present a plan for distribution entirely satisfactory to the court.

I, therefore, vote to dismiss the appeal from the order denying the application to compel petitioners to exhibit their authority.

Finch, J., concurs.

On each appeal: Order reversed, with ten dollars costs and disbursements, and motion granted. Settle order on notice.