Russian Reinsurance Company et al., Respondents, *v.* Francis R. Stoddard, Jr., as Superintendent of Insurance of the State of New York, et al., Appellants.

Comity — insurance corporations — common sense and justice must be consideration of weight in determining public policy as to opening of our courts to foreign corporations — juridical conceptions as to existence of foreign government — consideration of practical consequences to determine whether carried beyond limits of common sense and fairness — action to compel return of property deposited by foreign insurance company for protection of policyholders and creditors — court will not permit removal of property from custody of trustee approved by Superintendent of Insurance until proof is made that removal will serve corporate purpose which can be carried out by corporate officers — inability to protect defendant against second recovery a strong consideration against assumption of jurisdiction — when justice and common sense require courts to give effect to conditions existing in Russia though created by a force not recognized as a State or government.

1. The courts of this State give or deny the effect of law to decrees or acts of a foreign governmental establishment in accordance with our own public policy; our courts are open or closed to foreign corporations according to our public policy, and in determining our public policy in these matters common sense and justice must be consideration of weight.

2. Where the logical application of juridical conceptions would require us to hold that the law of Russia has remained unchanged since December, 1917; that the Soviet Republic does not exist and, therefore,

cannot act; that the plaintiff corporation, which was incorporated by the former government of Russia, still lives and is domiciled in Russia and is under the management of its former directors; though we know that its property in Russia has been sequestrated, its directors driven into exile, its business monopolized by an agency which enforces its decrees as if it were a government and is recognized as a government by most of the countries of Europe, then we should consider its practical consequences to determine whether we have not been carried beyond the " self-imposed limits of common sense and fairness," and in testing a result by such standards we may look beyond all fictions to the facts behind them.

3. In an action in equity brought to compel the return to plaintiffs of securities and moneys deposited by plaintiff insurance company with defendant trust company, under a trust agreement, as capital of said insurance company in this State for the protection of policy-holders and creditors in the United States, where defendant trust company has not heretofore failed in its obligations and does not now repudiate its obligation at the proper time to pay over the property in its hands to the person or corporation lawfully entitled to receive it, but resists the plaintiffs' claim solely on the ground that the plaintiffs fail to establish ownership or right of possession to the exclusion of others who might demand the property hereafter, pointing out that at the present time the plaintiff corporation is no longer in existence or, if in existence, has no capacity to sue; or in the alternative that the men who claim to be its directors and as such have attempted to take corporate action to demand the return of the property and to authorize the bringing of this suit, no longer represent the corporation, and there is no proof that removal of the property from the custody of the trustee will serve a corporate purpose which can be carried out by the only corporate officers able to act, but it appears that injustice might be done to defendant if judgment is granted against it through inability of our courts to protect it against a second recovery upon the same cause of action, a strong consideration is presented against assuming jurisdiction of the action.

4. The responsibility rests upon the State Department to determine in the first instance whether and upon what terms the Soviet government should hereafter be recognized and the courts will then determine, subject to any rights granted by treaty, whether they will enforce any claim asserted by that government. To the extent that until the time comes when a government which we recognize rules in Russia or at least until the plaintiff is able to re-establish itself there the courts should not take jurisdiction of this equitable cause of action. Both justice and common sense require us to give effect to the conditions

existing in Russia, though those conditions are created by a force which we are not ready to acknowledge as entitled to recognition as a State or government.

*Russian Reinsurance Co.* v. *Stoddard,* 211 App. Div. 132, reversed.

(Argued February 26, 1925; decided April 7, 1925.)

APPEAL from a judgment, entered January 15, 1925, upon an order of the Appellate Division of the Supreme Court in the third judicial department, reversing a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term and directing judgment in favor of plaintiff.

*Albert Ottinger, Attorney-General (Edward G. Griffin* and *Joseph C. H. Flynn* of counsel), for Superintendent of Insurance, appellant.

*J. Du Pratt White, Ernest G. Fifield* and *James A. Murphy* for Bankers Trust Company, appellant. It was error of law to hold that the Russian Reinsurance Company was not dissolved by the Soviet decrees. (*Oetjen* v. *Central Leather Co.,* 246 U. S. 303; *Wulfsohn* v. *Russian Republic,* 234 N. Y. 376; *Sea Ins. Co.* v. *Rossia Ins. Co.,* 17 Lloyd's List, L. R. 316; *Russian C. & I. Bank* v. *Comptoir, etc.,* [1923] 2 K. B. 630; *United States* v. *Rice,* 4 Wheat. 246; *Thorington* v. *Smith,* 8 Wall, 1; *U. S.* v. *Insurance Companies,* 22 Wall, 99; *Lewis* v. *Hearne,* 34 Tex. 382; *Hubbard* v. *Harnden Express Co.,* 10 R. I. 244; *MacLeod* v. *United States,* 229 U. S. 416.) Even if the Russian Reinsurance Company was not dissolved, its right to an accounting against the Bankers Trust Company was taken from it. It was error of law to hold that plaintiffs are entitled to receive the trust fund. (*Russian C. & I. Bank* v. *Comptoir, etc.,* 40 L. T. R. 837; *Warner* v. *Jaffray,* 96 N. Y. 254.) It was error of law to hold that the individuals who met in Paris constituted a board of directors and that they had power to act outside of Russia. (*Crashley* v. *Press Pub. Co.,* 179 N. Y. 27;

*Cuba R. R. Co.* v. *Crosby*, 222 U. S. 473; *Insurance Press* v. *Montauk F. D. Wire Co.*, 83 App. Div. 259; *Sea Ins. Co.* v. *Rossia Ins. Co.*, 17 Lloyd's List, L. R. 316; *Ormsby* v. *Vermont Copper & Mining Co.*, 56 N. Y. 623; *Matter of George* v. *Holstein Friesian Association*, 238 N. Y. 513.) It was error of law to hold that if the Russian Reinsurance Company still exists, it may sue in the courts of this State. (*Nat. Tel. Mfg. Co.* v. *Dubois*, 165 Mass. 117.)

*William C. Cannon*, *amicus curiæ*. Even though a government may not be one which is recognized as a *de facto* government it may still be a government by paramount force whose acts are to be accorded validity so far as obedience to those acts is necessary to the maintenance of civil order. (*Thorington* v. *Smith*, 8 Wall. 1; *Williams* v. *Bruffy*, 96 U. S. 176; *Horn* v. *Lockhart*, 17 Wall. 570; *Snodgrass* v. *Adams*, 26 La. Ann. 235; *Lay* v. *O'Neil*, 29 La. Ann. 722; *Sharkey* v. *Bankston*, 30 La. Ann. 891; *Lewis* v. *Hearne*, 34 Tex. 382; *Hubbard* v. *Express Co.*, 10 R. I. 244; *Dillard* v. *Alexander*, 9 Heisk. 725; *McLeod* v. *United States*, 229 U. S. 416.)

*Frederick B. Campbell* and *Paul C. Whipp* for respondents. The question of the existence and standing in this court of the plaintiff Russian Reinsurance Company is not affected by the alleged Soviet decrees of nationalization and spoliation. (*Rose* v. *Himely*, 4 Cranch, 241; *Gelston* v. *Hoyt*, 3 Wheat. 246; *The Neuva Anna*, 6 Wheat. 193; *Cherokee Nation* v. *State of Georgia*, 5 Pet. 1; *Williams* v. *Suffolk Ins. Co.*, 13 Pet. 415; *Kennett* v. *Chambers*, 14 How. 38; *Jones* v. *United States*, 137 U. S. 202; *Sokoloff* v. *Nat. City Bank*, 239 N. Y. 158; *James & Co.* v. *S. R. Ins. Co.*, 239 N. Y. 248; *Joint Stock Co.* v. *Nat. City Bank*, 210 App. Div. 665.) The Soviet decrees do not effect the dissolution of the plaintiff Russian Reinsurance Company. (*James & Co.* v. *S. R.*

*Ins. Co.*, 239 N. Y. 248.) The Soviet decree of confiscation cannot have any validity outside the territorial jurisdiction of Russia, and even in the event of recognition of the Soviet Republic, American courts will not enforce such decree, because it is contrary to the spirit of our institutions. (*James & Co.* v. *Second Russian Ins. Co.*, 239 N. Y. 248; *State of Colorado* v. *Harbeck*, 232 N. Y. 71; *Marshall* v. *Sherman*, 148 N. Y. 9; *Huntington* v. *Atrill*, 146 U. S. 657; *The Antelope*, 10 Wheat. 66, 123; *Loucks* v. *Standard Oil Co.*, 224 N. Y. 99, 102; *Hamilton* v. *Accessory Transit Co.*, 26 Barb. 46; *Second Russian Ins. Co.* v. *Miller*, 297 Fed. Rep. 404; *Sokoloff* v. *Nat. City Bank*, 239 N. Y. 158.) The evidence and the law are in accordance with the unanimous finding of the court below that the present directors of the plaintiff company, duly elected by the shareholders at meetings held in Petrograd prior to the advent of the Soviet regime, continue to hold office until their successors are elected. (*People* v. *Runkel*, 9 Johns. 147; *Trustees of Vernon Society* v. *Hills*, 6 Cow. 23; *Olcott* v. *Tioga R. R. Co.*, 27 N. Y. 546; *Deming* v. *Puleston*, 55 N. Y. 655; *Sanborn* v. *Lefferts*, 58 N. Y. 179; *Reed* v. *Keese*, 60 N. Y. 616; *Sturges* v. *Vanderbilt*, 73 N. Y. 384; *Van Amburgh* v. *Baker*, 81 N. Y. 46; *Monroe* v. *Douglass*, 5 N. Y. 447; *Savage* v. *O'Neil*, 44 N. Y. 298.) The finding of the Appellate Division that the meeting in Paris, France, of plaintiff company's board of directors is a valid meeting of such board, is in accordance with the facts and the law. (*Galveston R. R. Co.* v. *Cowdrey*, 11 Wall. 459; *Smith* v. *Alvord*, 63 Barb. 415.)

LEHMAN, J. The Russian Reinsurance Company was incorporated in December, 1899, by the government of Russia under a special statute which constitutes its charter and by-laws. In or about 1906 the corporation received authority to transact business in the State of New York. In accordance with the provisions of section 27 of

the Insurance Law (Cons. Laws, ch. 28), it appointed the
Mercantile Trust Company of New York (subsequently
merged into the defendant Bankers Trust Company) as
trustee, and deposited with it under a trust agreement
securities and money to be held as its capital in this State
for the protection of policyholders and creditors in the
United States. As such trustee the defendant Bankers
Trust Company now holds these securities and moneys.
This action has been brought to compel their return to
the plaintiffs. The Bankers Trust Company claims no
interest in this property except as trustee or depositary.
It resists the plaintiffs' claim solely on the ground that the
plaintiffs fail to establish ownership or right of possession
to the exclusion of others who might demand the property
hereafter. That at the present time the plaintiff cor-
poration is no longer in existence or, if in existence, has
no capacity to sue; or in the alternative that the men who
claim to be its directors and as such have attempted to
take corporate action to demand the return of the property
and to authorize the bringing of this suit, no longer
represent the corporation. It urges that in any event the
courts of this State should not assume jurisdiction of the
action because they cannot grant a judgment which
would be binding upon other parties who are not before
the court and who might hereafter be able to establish
a valid claim to the cause of action or property formerly
belonging to this plaintiff.

A corporation organized and existing under the laws of
a foreign state which we have recognized and with which
we live in comity may ordinarily seek the aid of our
courts in the assertion of its rights, even against our own
citizens. If the existence of the corporation, its capacity
to sue, or the authority of its directors to represent it or
to bring the action is challenged, we look to the charter
and the law of its corporate domicile for the data upon
which we may rest our determination of such questions.
If it is claimed that the plaintiffs' rights or property have

passed to another, we examine the laws of the particular jurisdiction which may regulate their transfer or devolution. In such cases the judgments of our courts not only are binding upon the parties before them, but since other jurisdictions would determine the same questions upon the same considerations and presumably reach the same conclusion as our courts, the danger that a defendant might be subjected to a double recovery at the suit of another claimant may not be regarded as serious. At least in actions at law when other possible claimants could not be brought into court, the court has ordinarily not regarded such danger as a sufficient ground to refuse to take jurisdiction of an action to enforce rights against a resident of this State which a plaintiff can establish by competent evidence.

The situation may present a different aspect when, as in this case, the domicile of the corporate plaintiff is in a country which for years has been without any government recognized by the United States, and all proceedings by the stockholders and directors of the corporation, within the country of its domicile, are forbidden and prevented by the civil authorities which control that country, and these authorities have also passed a decree which purports to liquidate and nationalize the corporation and perhaps to confiscate its shares of stock and property.

Until these civil authorities have been recognized by our State Department we may not regard them as the lawful sovereign government of the State. (*Rose* v. *Himeley*, 4 Cranch, 241; *Gelston* v. *Hoyt*, 3 Wheat. 246; *Kennett* v. *Chambers*, 14 How. [U. S.] 38.) In order to avoid possible confusion which may ensue when a term which ordinarily expresses a well-recognized juridical concept is applied to a new and partially undefined state of facts, we shall not even call these authorities a government. (*Sokoloff* v. *National City Bank*, 239 N. Y. 158.) We assume for the moment that, without recognition, their

decrees lack here all the force which the decrees of a recognized sovereign government would have. We may assume that ordinarily such decrees are insufficient to furnish justification for an act which would otherwise be unlawful; that they can be the basis of no right which may be asserted in the courts of this country and can excuse no wrong. Whether these assumptions correctly represent rules to be applied under particular circumstances is a question which might arise if a representative of the civil authorities now functioning in Russia, or a liquidator appointed by them, laid claim to the assets held in trust by the Bankers Trust Company, or if the Bankers Trust Company urged as a defense to the present action that it had paid over the property to some other party, relying on a decree of the so-called Soviet government. Until the question how far, if at all, the courts of this country may give effect to the decrees of an unrecognized governmental authority arises necessarily and directly, its further consideration may be postponed. In the present case the primary question presented is not whether the courts of this country will give effect to such decrees, but is rather whether within Russia, or elsewhere outside of the United States, they have actually attained such effect as to alter the rights and obligations of the parties in a manner we may not in justice disregard, regardless of whether or not they emanate from a lawfully-established authority.

Certain findings of the trial court which have been unanimously affirmed by the Appellate Division set forth the general condition of Russia since the fall of the government of the Czar in 1917. We are bound by these findings, and in any event they merely embody a concise narration of events which, in most part, are within the common knowledge of the people of this country. Among these findings are the following:

" 6. In 1917 the Government of the Czar in Russia was overthrown and a Provisional Government, sometimes

known as the Kerensky Government, was established in Russia, which was recognized in full by the Government of the United States of America on March 22, 1917.

" 7. The Provisional or Kerensky Government of Russia was overthrown or fell early in November, 1917, and was followed by the Russian Socialist Federated Soviet Republic.

" 8. The Russian Socialist Federated Soviet Republic is the *de facto* government in Russia, enforcing in Russia by force its decrees.

" 9. The State of Russia is now governed by the Russian Socialist Federated Soviet Republic. Such government there exists, clothed with power to enforce its authority within its own territory, obeyed by the people over whom it rules, capable of performing the duties and fulfilling the obligations of an independent power and able to enforce its claims by military force.

" 10. The ambassador of the Provisional (Kerensky) Government to this country continued to be recognized until June 30, 1922, when his duties were terminated.

" 11. There are no diplomatic, consular or trade representatives of the United States Government in Russia at the present time.

" 12. The United States Government has not accorded recognition to the Russian Socialist Federated Soviet Republic, and there is in the United States no recognized representative of that Regime.

" 13. The following countries have extended full recognition to the Russian Socialist Federated Soviet Republic (Soviet Regime): Austria; Esthonia; Lithuania; Turkey; Afghanistan; Finland; Latvia; Poland; Persia; Germany; Great Britain; Italy; Greece; Norway and Sweden; and Denmark and Czechoslovakia have concluded trade agreements with the Soviet Regime.

" 14. The United States has concluded no treaties with Russia as represented by the Russian Socialist Federated Soviet Republic."

The fall of one governmental establishment and the substitution of another governmental establishment which actually governs; which is able to enforce its claims by military force and is obeyed by the people over whom it rules, must profoundly affect all the acts and duties, all the relations of those who live within the territory over which the new establishment exercises rule. Its rule may be without lawful foundation; but lawful or unlawful, its existence is a fact and that fact cannot be destroyed by juridical concepts. The State Department determines whether it will recognize its existence as lawful, and until the State Department has recognized the new establishment, the court may not pass upon its legitimacy or ascribe to its decrees all the effect which inheres in the laws or orders of a sovereign. The State Department determines only that question. It cannot determine how far the private rights and obligations of individuals are affected by acts of a body not sovereign or with which our government will have no dealings. That question does not concern our foreign relations. It is not a political question, but a judicial question. The courts in considering that question assume as a premise that until recognition these acts are not in full sense law. Their conclusion must depend upon whether these have nevertheless had such an actual effect that they may not be disregarded. In such case we deal with result rather than cause. We do not pass upon what such an unrecognized governmental authority may do, or upon the right or wrong of what it has done; we consider the effect upon others of that which has been done, primarily from the point of view of fact rather than of theory.

It appears from an examination of the findings which have been unanimously affirmed that " the Russian Socialist Federated Soviet Republic enacted and promulgated in Russia certain decrees of nationalization in respect of various businesses and industries including the business of insurance." We have held in *James & Co.*

1925.]        Opinion, per LEHMAN, J.        [240 N. Y. 149]

v. *Second Russian Insurance Co.* (239 N. Y. 248) that such decree of nationalization " has no effect in the United States, unless, it may be, to such extent as justice and public policy require that effect be given," and that neither justice nor public policy requires us to give to such decrees an effect which will result in the extinction of the corporate existence of an insurance company which has been doing business in this State under authority of the Superintendent. Though such decrees may not be regarded as having terminated the corporate existence of this plaintiff, it is evident that plaintiff has been actually prevented from conducting its corporate business in the country of its domicile, its property there has been sequestrated, its business nationalized, and it has been driven out, if it is possible that a corporation may be driven out from its domicile, and yet maintain its life. Since March, 1917, no meetings of its stockholders have been held. The terms for which the various directors were elected have expired and no election has been held since that time. Although the charter provides that the seat or place of residence of the board of directors is at St. Petersburg or Petrograd, seven of the eight persons who were acting as directors when the Soviet Republic was established have been compelled to leave Russia and have held meetings in Paris. Although the charter provides that the management of the company's business is intrusted to the board of administration, and the general meeting of shareholders, no such general meeting has been or could be held. Although the charter provides that the board of administration may " manage and supervise all affairs of the Company, without exception, within limits established by a general meeting " and further that " the details relating to the management of the business by the Board will be determined by an instruction to be approved by a General Meeting of shareholders " and that " all matters relating to the affairs of the Company may be examined and decided

upon at the General Meetings of shareholders," yet since the Soviet Republic was established the directors have been compelled to assume the sole management of the affairs of the corporation without direction or restriction emanating from a general meeting of shareholders. It has not even been possible to subject its acts to supervision or examination by the revisions committee created by the charter for that purpose.

Do these facts establish that the plaintiff has no right to revoke the deed of trust and to receive the property after such trust has been terminated, or that the directors have no longer authority to represent the plaintiff? Perhaps not, but they do throw doubt upon both propositions, and before we pass upon them we must determine whether assumption of jurisdiction by our courts to determine these questions would be in accordance with our public policy. There is evidence, even though contradicted, which is sufficient to sustain findings that under the plaintiff's charter and the Russian law the plaintiff corporation may hold its directors' meeting in Paris and that each director continues in office until his successor is elected. Greater difficulties are presented by the question of whether the directors of a corporation still have power to represent the corporation, when for a long period conditions have made it impossible for the corporation to function in its domicile or to hold meetings of shareholders who have the final right to determine all the details of the corporate affairs and to give directions to the board of directors. The directors are merely the agents of the corporation, and when circumstances have changed, to such extent the conditions under which that agency was to be exercised and have rendered inoperative the checks and limitations provided in the charter; have made impossible the revocation of the agency or the substitution of new agents, we may question whether that agency continues in full force and vigor after the lapse of years. No answer to this question may be found

in precedents, for until recently the conditions which gave rise to the question had never arisen. Doubtless our decision in *James & Co.* v. *Second Russian Insurance Co.* (*supra*) that the existence of the corporation has not been terminated carries with it some implication that for certain purposes at least the authority of the directors continues. Perhaps a corporation with sufficient vitality to appear in court must have officers or agents who may act for it in the assertion or defense of its rights; yet even though we should assume that the authority of the agent to defend the corporation from attack, to preserve its property and to ask the courts to redress wrongs committed against it continues, it does not follow that the general authority of the agent also continues in full force. At present we content ourselves with stating the question; we do not in any wise express opinion as to its proper solution. It is sufficient to point out that different courts might reach different conclusions, and these conclusions might be based upon various considerations and be dictated by circumstances which may exist in one case and not in others.

We have not in this connection stressed the effect of the decrees of the Soviet Republic, except in so far as they have been actually enforced in the territory of Russia. The findings which have been unanimously affirmed state that the Soviet Regime " claiming to be the government of Russia, purported to take governmental action, liquidating all insurance companies, confiscating their available property and nationalizing the business of insurance in Russia." Though our courts give to this "purported governmental action" no extraterritorial effect, yet the so-called Soviet Regime, according to the findings or common knowledge, has been recognized by many other countries, including Great Britain, France, Italy and Germany. These countries, having admitted the Soviet Republic to their comity, will determine for themselves how

[240 N. Y. 149]        Opinion, per Lehman, J.                    [April,

far this comity should lead them in opening the doors of
their courts to the Soviet Republic for the purpose of
enforcing its decrees; but a total disregard of its laws and
decrees as if they were non-existent, a failure to recognize
them as having the full force of law within Russia would
be without precedent, and would constitute a negation
of the full recognition these nations have extended to the
Soviet Republic.  The directors who attempt to act for
the plaintiff corporation have held their meetings within
France.  In France the lawful government of the country
of the plaintiff's domicile is the Soviet Republic, and its
decrees are in full sense the laws of the country it rules.
Under such laws the corporation is nationalized, it may
not continue to do business, its directors are no longer its
agents.  The situation is not only without precedent but
anomalous.  In its domicile the corporation cannot
function, the government of the place where its directors
sit has recognized as sovereign the government of the
country of the corporate domicile which has issued a
decree which either terminates the existence of the cor-
poration or at least has terminated the right of directors
or shareholders to act for the corporation.  Though we
might say that for us such decree is not the law even
of the country which the Soviet government rules, yet
it is enforced as the law in that country and is recognized
as the law of that country by other great nations.  The
right of the directors to represent the corporation, even
the existence of that corporation, must be determined
in accordance with the law of Russia.  For us the law
of Russia, in its strict sense, may still be the law as it
existed when the Czar ruled; for other nations the law of
Russia is the law sanctioned by the Soviet Republic.
Our view of what is the law of Russia rests upon a juridical
conception not always in consonance with fact; in other
nations recognition has brought juridical conceptions and
facts into harmony.  Do these juridical conceptions
require us to hold that the law of Russia has remained

unchanged since December, 1917; that the Soviet Republic does not exist and, therefore, cannot act; that the plaintiff corporation still lives and is domiciled in Russia and is under the management of its former directors; though we know that its property in Russia has been sequestrated, its directors driven into exile, its business monopolized by an agency which enforces its decrees as if it were a government and is recognized as a government by most of the countries of Europe? Shall we recognize the right of the corporate directors to revoke the deed of trust and to receive property deposited thereunder though their authority is no longer recognized in the country of the corporate domicile, or in the country where the directors reside; though they might probably urge the non-existence of the corporation as a defense to any action brought by policyholders, creditors or stockholders in any forum which gives effect to the decree of nationalization made by the Soviet Republic; and the corporation will be immune from suit here after it withdraws from this jurisdiction? If the logical application of juridical conceptions leads to this result, then we should consider its practical consequences to determine whether we have not been carried beyond the " self-imposed limits of common sense and fairness." We shall not attempt to collate the authorities in order to deduce from them a new general rule which will define these limits. The very nature of the problem shows that general definitions must hamper rather than promote its solution. The facts of each case, the result of each possible decision, determines whether that decision accords with common sense and justice. There can be no true precedent in the books, when the facts are unprecedented. It remains for us to determine whether the result of the present judgment is contrary to common sense and justice.

We give or deny the effect of law to decrees or acts of a foreign governmental establishment in accordance with our own public policy; we open or close our courts to

foreign corporations according to our public policy, and in determining our public policy in these matters common sense and justice must be consideration of weight.

The plaintiff insurance company deposited property with the defendant trust company in order to comply with the conditions imposed by the Insurance Law as a prerequisite to doing business within the State. Under the deed of trust the defendant assumed obligations which a court of equity will ordinarily enforce. The defendant has not heretofore failed to comply with these obligations; it does not now repudiate its obligation at the proper time to pay over the property in its hands to the person or corporation lawfully entitled to receive it. It admits the obligation, it questions whether the party to whom that obligation is due is the plaintiff herein. The plaintiff appeals to a court of equity to compel the defendant to comply with an obligation which the defendant admits; the court must determine whether equitable principles should lead it to recognize the plaintiff as the party who may at the present time compel the defendant to deliver the property to it. The plaintiff if it exists at all is an artificial entity, a creature of statute, an abstraction rather than an actuality. It is in fact without existence in Russia which has given it birth; it may be in law non-existent in the countries which have recognized the Soviet Republic. It exists here solely by force of the juridical conception which we have pointed out should not be carried beyond the limits of common sense and justice. In testing a result by standards of common sense and justice we may look beyond all fictions to the facts behind them. At the present time this exiled corporation, unable to function in Russia, unable to hold stockholders' meetings, can function if at all only through its directors, acting as its agents. A judgment in this action in favor of the plaintiff is in effect a judgment directing delivery of the moneys to these directors by the present custodians. Under the plaintiff's corporate

charter the property in the defendant's custody is part of the capital stock and reserve funds of the company which may be deposited by the directors in a credit institution only with the consent of certain government officials who are no longer functioning if indeed alive. · The company cannot do business in Russia because it is excluded therefrom; it cannot do business under the management of the directors who here claim to represent it in any country which gives full force and effect to the decrees of the Soviet Government; it cannot do business in this jurisdiction after it has withdrawn these moneys from the depositary and it makes no claim that it intends or in fact could make use of the prop· erty as working capital in doing business elsewhere. Though this property in form belongs to the corporation, in fact, if it has not been confiscated, the policyholders, creditors and shareholders are eventually entitled to it. Certainly it does not belong to the directors to do with as they will. The directors may not distribute these moneys in liquidation, for under the express provision of the charter, liquidation if ordered must be carried out by other officers. Moreover, it is somewhat difficult to see how or where under present conditions a distribution of the assets among policyholders, creditors or stockholders could be successfully carried out, except in Russia, from which the corporation is now excluded. The corporation and its directors are not seeking redress for a wrong committed, or to establish an obligation which has been repudiated. They show no danger of waste. They do not ask for the corporate property so that it may be used in corporate business. They ask the court to remove property from a custodian selected by the plaintiff itself with the approval of the Superintendent of Insurance, and to place it in the hands of a board of directors whose term has long expired; and whose continued authority rests rather upon necessity than upon the will of the principal, and is limited by the logic of the same necessity upon

which it rests.   Section 63, subdivision 4, of the Insurance Law provides that in certain cases the Superintendent of Insurance shall take possession of the property and conserve the assets of a foreign corporation.  The present situation of the plaintiff corporation may not bring it within the letter of that section; yet its situation is such that a court of equity might well hesitate to grant a judgment which will permit the removal of its property from the custody of a trustee approved by the Superintendent until proof is made that such removal will serve a corporate purpose which can be carried out by the only corporate officers now able to act.

We do not assume that these directors would not safely keep this property if delivered to them; we do not now decide that any public policy forbids. us after the claims of domestic creditors are secured, to order the delivery of the property to the directors of the corporation merely because of these considerations.  At least, however, they point to the conclusion that there is no impelling reason why the court should take jurisdiction; they become  cogent  arguments  why  the  court  should  *not* take jurisdiction if it also appears that injustice might be done to this defendant if judgment is granted against it. It seeks protection against any possible claim that may hereafter be made against it.  Such a claim after judgment in favor of this plaintiff could conceivably be made by the Soviet government claiming under its decrees of nationalization and confiscation, or by the corporate plaintiff claiming that its directors had no authority to represent it when they revoked the deed of trust and demanded the money from the defendant.  It may be conceded that no public policy requires us to refuse to order the delivery of the property to the plaintiff in order to give the Soviet government a possible opportunity to assert a claim based upon confiscation in our courts or the courts of any other country, nor will we assume that the State Department will ever enter into such relations with the

Soviet government as might compel our courts to enforce such a claim. It may be conceded that if we held that the present directors have authority to take action as they have done, we necessarily also hold that the corporation could never make valid claim for the fund thereafter. The deed of trust was executed here; the trust is to be executed here; the defendant resides here; the situs of the cause of action is here; and the possibility of any court of this State, or of any other jurisdiction of this country, allowing a second recovery upon the same cause of action, if we decide in favor of the plaintiff, is so remote that we might perhaps disregard it. May we regard as similarly remote the possibility of such a second recovery in the courts of a foreign nation? We have pointed out that the existence of the corporate plaintiff, its right to sue, the authority of the directors and the devolution of title to its assets must all be determined by the Russian law. We have pointed out that what constitutes law in Russia depends upon who is recognized as sovereign and the source of law. We recognize one source of law; most of the nations of Europe look to another sovereign as its source. We may anticipate respect for our decisions in the courts of foreign jurisdiction; we cannot anticipate that these courts will follow our decisions when they are based upon somewhat doubtful inferences drawn from disputed facts and resting on a premise of who is the lawful sovereign of Russia which other jurisdictions are by their own public policy compelled to deny. Our decision upon this point would establish only the fact that this plaintiff, under our view of the Russian law, is properly in our courts; when another party claims ownership of the same cause of action or challenges the correctness of our decision that this plaintiff has been before our court, then the question of fact may be determined anew. We do not assume that the courts of any foreign country would take jurisdiction to determine such questions in any action brought against a trustee in the situation of

this defendant, either before or after the question was submitted to us. Perhaps their public policy based upon comity with us might cause them to refuse such jurisdiction, yet under the circumstances we cannot. regard as entirely remote the possibility that in a foreign country where the defendant trustee may be doing business another action might be maintained in which the decision of this court would serve as no adequate protection against a second recovery.

We grant admission to the courts of this State to foreign corporations because of comity. We have not admitted to our comity the Soviet Republic, and the plaintiff denies allegiance to it. The claims based upon comity with a government of the Czar which may exist as a juridical concept but is in fact not functioning and is without representative here is tenuous. It should not prevail where injustice follows to one of our own nationals.

Our inability to protect by our judgment this defendant against a second recovery upon the same cause of action presents a strong consideration against assuming jurisdiction of this action. (*Mahr* v. *Norwich Union Fire Insurance Co.*, 127 N. Y. 452.) The corporation is deprived of no substantial right or benefit if our courts refuse to entertain jurisdiction of an action brought by it until the time comes when a government which we recognize rules the country of plaintiff's corporate domicile, or at least until the plaintiff corporation is able to re-establish its existence in that domicile, and the machinery provided by its charter for the management of its affairs is again functioning. If it is urged that by so doing we may enable the Soviet government in case of recognition by the State Department to assert here an unjust claim based upon confiscation, the answer is that the responsibility rests upon that branch of our government to determine in the first instance whether and upon what terms the Soviet government should hereafter be recognized and the courts will then determine, subject

to any rights granted by treaty, whether they will enforce any claim asserted by that government.

To the extent that until that time the courts should not take jurisdiction of this equitable cause of action, both justice and common sense require us to give effect to the conditions existing in Russia, though those conditions are created by a force which we are not ready to acknowledge as entitled to recognition as a state or government.

The judgment of the Appellate Division should be reversed and the judgment of Special Term affirmed, without costs.

CRANE, J. (dissenting). By the majority opinion of this court it is conceded that the Bankers Trust Company has no legal claim to the funds in question, and neither has the Soviet Russian government. The funds belong to the Russian Reinsurance Company. By a decree of the Soviet government, which we refuse to recognize, that company has been put out of business, and its property confiscated, in so far as Soviet laws and decrees can be executed. The stockholders who own this money have no means whatever of acting, except through the agents whom they have appointed, to wit, the directors. The company is still in existence; the directors are still entitled to act, and would act within the domain of Russia, but for the decrees of the Soviets. The so-called government has tried to put a stop to all these things. We refuse to recognize its acts. What then must be the logical conclusion? It is that the property here belonging to the Russian Reinsurance Company should be paid to the directors, or the plaintiff, Rasor, as their duly authorized representative. Our courts are justly sensitive about giving force and effect to the decrees of confiscation scattered broadcast by the Russian government. And yet by such a decision as this, we are accomplishing I fear, by indirection, that which we say we would not do directly. If the Bankers Trust Company has no right to this money, and neither the Russian Reinsurance

Company, nor its directors, nor its stockholders have any right to it which they can enforce here, what is to become of the money? Shall the Bankers Trust Company hold it until our country shall officially recognize Russia? If so, under the decisions which this court has made, Soviet Russia may then be entitled to the funds. I consider that our decision has the tendency to give force and effect to these unrecognized decrees of the present Russian officials. The fear, which is apparently the only basis for our present decision, that the Bankers Trust Company may in some way be called upon to pay this money twice is in my judgment so very remote, so far from the realm of possibility, that I would rather see the money go now to the persons entitled to it.

HISCOCK, Ch. J., CARDOZO and POUND, JJ., concur with LEHMAN, J.; CRANE, J., reads dissenting opinion; McLAUGHLIN and ANDREWS, JJ., not sitting.

Judgment reversed, etc.