Banque Internationale De Commerce De Petrograd, Plaintiff, *v.* The National City Bank of New York, Defendant.

Supreme Court, New York County, May 15, 1928.

*Campbell & Wipp*, for the plaintiff.

*Shearman & Sterling*, for the defendant.

Peters, J. This is an action at law to recover from the defendant the sum of $67,954.84, less certain credits amounting to $1,205.39, deposited with defendant by Petrogradsky Mejdunarodny Kommertschesky Bank, otherwise known as Banque Internationale De Commerce De Petrograd, and its Kharkoff branch prior to the beginning of the so-called Soviet revolution in Russia in November, 1917. Defendant does not claim title to the moneys in question. Aside from the events of the Russian revolution and consequences flowing therefrom, there would be no question as to the right of the plaintiff to recover. The defendant, however, sets up a number of defenses, among others, that the plaintiff has no juristic existence; that the authority of the persons who instituted this action had wholly expired prior to the beginning of the action; that said persons had no authority to act for the plaintiff except as a body at a duly convened meeting held in Russia; that the Soviet government claims ownership of these deposits and such government has been recognized as the *de jure* or *de facto* government of Russia by many European and some Asiatic countries, in most of which defendant has either branches or deposits larger than those here involved; that these governments are recognizing the Soviet decrees as law

and defendant, in consequence, is liable in these jurisdictions to a second action for the amount of these deposits which might be brought by the Soviet government or some assignee thereof; that, therefore, this court should not take jurisdiction of this action because of its inability to protect defendant in such foreign country or countries, and, lastly, that no lawful demand has been made for the funds in question.

The existence of plaintiff is a question of fact and must be determined by the evidence introduced in this case which will now be examined.

On December 27, 1917, the revolutionists promulgated the following decree:

" Decree on the Nationalization of Banks.

" In the interests of the proper organization of national economic life, of the thorough eradication of banking speculation and complete emancipation of the workers, peasants, and the whole labouring population from exploitation by banking capital, and also with the object of establishing a single People's Bank of the Russian Republic, genuinely serving the interests of the people and the poorest classes, the Central Executive Committee hereby decrees:

" 1. Banking business is declared a State monoply.

" 2. All existing private joint stock banks and banking houses are merged in the State bank.

" 3. The assets and liabilities of the liquidated banks are taken over by the State Bank.

" 4. The method of merging the joint stock banks in the State Bank shall be determined by a special decree.

" 5. The temporary administration of the business of joint stock banks shall be entrusted to the Council of the State Bank."

On January 26, 1918, the following decree was promulgated:

" 295. On the confiscation of shares of the former private joint stock banks.

" Decree of the Soviet of People's Commissars.

" 295. On the compensation of shares of the former private joint stock banks.

" 1. The capital stocks (subscription stocks, reserve and special) of the former private joint stock banks shall be transferred to the State Bank of the Russian Republic on the basis of complete confiscation.

" 2. All bank shares shall be declared null and void, and payments of dividends thereon of any kind whatsoever shall be unconditionally discontinued.

" 3. All bank shares shall be forthwith surrendered by the present holders to the local branches of the State Bank.

" 4. The holders of bank shares not in their possession shall be obligated to submit to the branches of the State Bank, registery bank shares owned by them indicating their exact whereabouts.

" 5. The holders of bank shares who will fail to surrender same (in accordance with cl. 3) or who will fail to submit their registery records (in accordance with cl. 4) within a period of two weeks following the day of the publication of the present decree, shall be punished by confiscation of all their property.

" 6. All transactions and deeds in connection with the bank shares shall be unconditionally prohibited. Parties to such prohibited transactions and deeds of transfer shall be punished by imprisonment for terms up to three years."

In the constitution promulgated by the revolutionists on July 10, 1918, there was contained the following provision:

3) " The transfer of all banks into ownership of the Workers' and Peasants' state as one of the means of the liberation of the toiling masses from the yoke of capital shall be hereby confirmed."

By January, 1918, the main office of plaintiff in Petrograd had been amalgamated with a number of other banks under the title of " Branch No. 1 of the State Bank of Russia." All the assets of the plaintiff in Russia were seized by the Soviet government.

On December 10, 1918, a resolution was promulgated by the revolutionists providing for the procedure for the nationalization of private banks.

On January 19, 1920, there was promulgated the following decree:

" 25. On the abolition of the People's Bank.

" The nationalization of industry has concentrated in the hands of the State the most important branches of production and supply. At the same time it has brought under the general budget system the entire state industry and commerce which eliminates the necessity of using further the People's (State Bank) as a state credit institution in the former meaning of this word.

" Although the system of banking credit still retains its force for small private industrial activity and the needs of individual citizens depositing their savings in state receiving offices, nevertheless said operations, too, by reason of the gradual loss of their significance in the national economic life, no longer necessitate the existence of separate banking institutions. Said tasks, now of secondary significance, can be successfully achieved by the new central and local institutions of the People's Commissariat of Finance reformed on the basis of a single apparatus for cash, estimate and discount transactions.

" Therefore with the object of the unification of the estimate,

discount and cash transactions, the Soviet of People's Commissars resolves.:

" 1) To abolish the People's (State) Bank of the R. S. F. S. R. with all its constituent staffs of officials, establishments and institutions.

" 2) To abrogate the decree of the Soviet of People's Commissars of October 31, 1918 (Collect. Enact. 1918, No. 81, sect. 849) on the adjustment of the accounts between the State Treasury and the People's Bank.

" 3) To transfer all the assets and liabilities of the late People's Bank to the Central Budget and Discount Department.

" 4) To authorize the Department above referred to and the local organs the carrying out of such former banking operations as still retain force and significance.

" 5) To authorize the People's Commissariat and Finance to put into effect the provisions of the present decree."

The plaintiff has admitted that:

" Said constitution, decrees, resolutions and instructions of the said revolutionists were, after the dates when they were adopted or promulgated, respectively *put into effect* and *enforced* in Russia by superior forces which it was impossible for either of the parties hereto to resist."

In *Joint Stock Co.* v. *National City Bank* (240 N. Y. 368, 376) the court said: " Intent to terminate corporate existence should appear by express words or by necessary implication. It does not so appear from the language of the decrees upon which the plaintiff relies. In *Russian Commercial & Industrial Bank* v. *Comptoir D'Escompte DeMulhouse* ([House of Lords] 40 Times L. Rep. 837) the House of Lords seized upon surrounding circumstances as a basis for an inference that intent to terminate was not present though the decree not only nationalized banking but merged existing banks in the State bank. We need not go so far. The decrees before us are entirely consistent with the view that corporate form should be preserved though ownership of capital and right of direction might be changed."

In the case at bar the intent to terminate the complete existence of plaintiff does not rest on implication.

By the decree of December 27, 1917, the plaintiff bank was merged in and its assets and liabilities were taken over by the State Bank, the national Soviet bank. The decree of January 16, 1918, transferred the property of the plaintiff to the State Bank on the basis of complete confiscation and all its shares of stock were declared null and void. The constitution of July 10, 1918, confirmed the transfer of all private banks to the ownership of the Soviet. On January

19, 1920, the People's Bank was *abolished* and its assets and liabilities transferred to the Budget and Discount Department of the Soviet government and that department was authorized to carry out such former banking operations as still retained force and significance. The plaintiff was, therefore, not only merged with the State Bank, its property confiscated and its capital stock voided, but the People's Bank itself was subsequently *abolished* and its remaining functions transferred to a department of the Soviet government. There can be no question but that the existence of the plaintiff was effectually terminated. To hold otherwise would be to ignore the stipulated facts and undisputed evidence in the case, for the plaintiff has stipulated that the decrees bringing about such a result were put into effect and enforced in Russia.

In March, 1925, the Federal Court of Switzerland, a country which had not recognized the Soviet regime, in the case of *Banque International de Commerce de Petrograd S. A. Succursale de Geneve* v. *Hausner*, brought by the Geneva branch of the plaintiff in the case at bar for the recovery of an unpaid amount upon a current account, held that the action could not be sustained for the reason that the Geneva branch of plaintiff had no juristic existence because the plaintiff had no such existence. The lower courts had allowed the claim but were reversed by the Federal court. The court, in its opinion, said:

" The federal court cannot but bow before the accomplished fact and note the result thereof. A joint stock company exists only when the law acknowledges its existence, and foreign companies may be considered juristic persons only if the laws of their country consider them as such.   *   *   *   That which, in particular cases might be contrary to public order would be the pure and simple confiscation of the capital of the banks, but the non-payment of the debts by the People's Bank which took over the assets and liabilities of the private institutions, in no way alters the fact that the banks have been nationalized and consequently are no longer juristic persons. Therefore, since the plaintiff is not qualified to institute the present action, this action must be thrown out of court and it naturally becomes unnecessary to solve the other questions examined by the cantonale court."

The plaintiff was abolished by the Soviet government. Our government does not recognize the Soviet government, the destroyer of plaintiff, but we must recognize the *fact* that the corporate life of plaintiff has been terminated. We may not recognize the Soviet decrees but the court must recognize the *effect* of them on this plaintiff as shown by the evidence in this case.

The plaintiff cannot and does not base any claim to existence upon

the Soviet decrees. It must and does base its claim to existence upon the law of Russia as it existed before the Soviet Revolution. In the first place it must be borne in mind that the plaintiff was a creation of that law and yet there is now in Russia no government which recognizes that law and consequently no government which recognizes the existence of plaintiff in Russia. How then can it exist outside of Russia? In the next place the fugitive directors prosecuting this action in the name of a bank which once existed have not produced any evidence showing a single act of corporate existence or activity of plaintiff in Russia since the time of its abolition ten years ago. Not a shareholders' or directors' meeting has been held in Russia nor a single act of business transacted therein from the time the Soviet took possession of plaintiff and its branches in Russia. Its assets were confiscated. It has no place of business and all this manifestly because of the establishment of the Soviet government and the enforcement of its decrees. The plaintiff has failed wholly to show that it exists or has existed for ten years according to the requirements of the Russian Imperial law and this manifestly because it cannot function under or comply in any way with the provisions of its charter or of the Russian Imperial law due to the decrees and acts of the Soviet government.

Although the Chinese government and the French government have paid certain moneys to the directors acting in the name of the plaintiff in the Paris branch, such acts are, manifestly, not binding upon this court which must for itself determine the questions involved. Upon the evidence in this case it is held as a matter of fact that plaintiff was non-existent at the time this action was begun. Consequently the fugitive former directors living in Paris had no authority to institute the action and the complaint must be dismissed.

Even though, while plaintiff is non-existent in Russia, it might be recognized by the courts of this State by force of " juridical conception " (*Russian Reinsurance Co.* v. *Stoddard,* 240 N. Y. 149, 164), or as a corporation " half dead and half alive " (*James & Co.* v. *Rossia Ins. Co.*, 247 N. Y. 262, 271), nevertheless the directors have failed to show that under Imperial Russian law they had the right to bring this action. Their terms of office have long since expired. They have attempted to bring this action at law to recover the funds when the only power possessed by them is to *conserve* the property of the former bank wherever found unprotected. This the court finds as matter of fact, on the evidence, to be Imperial Russian law and it is also the law of this State. (*Russian Reinsurance Co.* v. *Stoddard; James & Co.* v. *Rossia Ins. Co., supra.*) The court in the last case said (p. 271): " We make no effort to define the

authority of its directors as such. We do hold that these proscribed individuals fleeing from the fury of the revolution retained the power to conserve property in this country as far as the courts of New York can protect it." The act of conservation approved by the court consisted of an *assignment* of the assets in this country of a Russian insurance company to the defendant in the case.

The rule to be observed by the courts in this class of cases is stated by the court in that case as follows (247 N. Y. 270): " Our attitude is fully expressed when we say ' the problem before us is governed, not by any technical rules, but by the largest considerations of public policy and justice.' (*James & Co.* v. *Second Russian Ins. Co.*, 239 N. Y. 248, 256.) "

This rule applies, of course, to both plaintiff and defendant. The rule was recognized in effect in *Russian Reinsurance Co.* v. *Stoddard* (240 N. Y. 149), where the court refused to take jurisdiction of an *equitable* action because in the event of recovery against defendant our courts would be unable to protect him in an action against him in a country where the Soviet Republic is recognized and where there were assets in the possession of defendant. While this is an action at law, similar facts have been set up by defendant herein as an *equitable* defense and have been proven. The court said (240 N. Y. 164, 168):

" The plaintiff appeals to a court of equity to compel the defendant to comply with an obligation which the defendant admits; the court must determine whether equitable principles should lead it to recognize the plaintiff as the party who may *at the present time* compel the defendant to deliver the property to it. The plaintiff if it exists at all is an artificial entity, a creature of statute, an abstraction rather than an actuality. It is in fact without existence in Russia which has given it birth; it may be in law non-existent in the countries which have recognized the Soviet Republic. It exists here solely by force of the juridical conception which we have pointed out should not be carried beyond the limits of common sense and justice. In testing a result by standards of common sense and justice we may look beyond all fictions to the facts behind them. * * *

" The claims based upon comity with a government of the Czar which may exist as a juridical concept but is in fact not functioning and is without representative here is tenuous. It should not prevail where injustice follows to one of our own nationals.

" Our inability to protect by our judgment this defendant against a second recovery upon the same cause of action presents a strong consideration against assuming jurisdiction of this action. (*Mahr* v. *Norwich Union Fire Insurance Society*, 127 N. Y. 452.) The cor-

poration is deprived of no substantial right or benefit if our courts refuse to entertain jurisdiction of an action brought by it until the time comes when a government which we recognize rules the country of plaintiff's corporate domicile, or at least until the plaintiff corporation is able to re-establish its existence in that domicile, and the machinery provided by its charter for the management of its affairs is again functioning."

Every argument in the opinion in that case supports the equitable defense in this action and this court should refuse to take jurisdiction of this action for the reasons therein stated.

In fact the decision of the Court of Appeals in the case just quoted is decisive of the case at bar. Counsel for plaintiff would distinguish that case from the case at bar on the ground that this is an action at law. In *Susquehanna S. S. Co.* v. *Andersen & Co.* (239 N. Y. 285) the court said (at p. 292): "With us, the rule is that 'under the head of equitable defenses are included all matters which would have before authorized an application to a Court of Chancery for relief against a legal liability, but which at law could not have been pleaded in bar' (*Mandeville* v. *Reynolds*, 68 N. Y. 528, 545; *Dobson* v. *Pearce*, 12 N. Y. 156)."

And again (at p. 294): "We think the principle that underlies our law of equitable defenses was stated long ago with precision and discernment. 'The question now is, ought the plaintiff to recover; and anything which he shows that he ought not is available to the defendant, whether it was formerly of equitable or legal cognizance' (*Dobson* v. *Pearce*, 12 N. Y. 156, 168; *Mandeville* v. *Reynolds*, *supra*). The whole body of principles, whether of law or of equity, bearing on the case, becomes the reservoir to be drawn upon by the court in enlightening its judgment (*N. Y. Central Ins. Co.* v. *Nat. Protection Ins. Co.*, 14 N. Y. 85, 90, 91)."

Defendant in this case has under the head of an equitable defense proven facts which would have authorized an application to a Court of Chancery, in an equitable action, for relief against a legal liability. Similar matters or facts were recognized by the court in the case of *Russian Reinsurance Co.* v. *Stoddard* (*supra*) as a reason why the Court of Chancery should afford relief against a legal liability, and such facts when proven as an equitable defense in an action at law is a proper ground for the refusal of the court to take jurisdiction of the action or to afford relief therein to the plaintiff.

This conclusion is all the more satisfactory in the case at bar because the three former directors bringing this action do not show that they represent or are in contact with a single former stockholder or creditor of plaintiff; whereas in the case of *Trading Company* v. *National City Bank* (N. Y. L. J. Jan. 29, 1925; affd., 218 App. Div.

763) it appeared that plaintiff was a close corporation and there were introduced in evidence by plaintiff the authorization for the suit and the ratification of the act of the directors by shareholders representing 1,433 out of a total of 1,500 shares of plaintiff issued and outstanding. In the case at bar the evidence is that the former directors of plaintiff have closed all branches except the one in Paris and are voting themselves and the councilors of the bank substantial salaries annually out of the profits realized by them in investing and reinvesting such assets of plaintiff as they have been able to collect.

These same former directors have also assisted in the organization and operation of a bank next door to the Paris branch of the plaintiff, with the name of " Banque Internationale de Commerce," omitting the words " de Petrograd," which were part of plaintiff's name and with the conceded purpose of appropriating the good will formerly possessed by plaintiff.

Mr. Guttman, one of these former directors, testified with respect to this new bank in part as follows: " Q. Why was the new bank under the same name as the plaintiff with the omission of the words ' de Petrograd?' A. *The reason therefor is that the Paris branch of the Petrograd Internationale Commerce Bank was very well known in Paris, and it enjoyed a very good reputation, and, therefore, it was found expedient to convey the same name and have it occupy the same quarters.* Q. In other words, the purpose was, was it not, to carry on the good will of the Paris Branch? A. Yes."

All new and active business is carried on by this new bank. No imputation is made that any of these acts of the directors is illegal, but former directors of a defunct corporation bringing an action *at law* in the name of such corporation to obtain possession of its assets should show some authorization from the shareholders. Furthermore, of the original seven directors, only three now remain alive. Who is to take possession of these assets when these three directors pass away? The plaintiff no longer exists. The assets outside of Russia belong either to its shareholders and creditors or to the Soviet Republic. The only power possessed in this State by the directors instituting this action is to bring an action, upon a proper showing, to *conserve* the property, that is, for the appointment of a receiver. (*Russian Reinsurance Co.* v. *Stoddard,* 240 N. Y. 682.) As the plaintiff is non-existent, this action in the final analysis is a contest for the possession of the moneys in question between defendant in whose keeping the funds were originally intrusted by plaintiff when it was in existence and the three fugitive directors bringing this action. The former directors show no authorization from the former stockholders. The defendant claims no title, has offered to surrender possession if a proper bond of indem-

nity is given it by the claimants, and asks only a judgment of a court which would afford it protection against suit and judgment in a country which has recognized the Soviet government. This court is unable to afford defendant such protection and must, therefore, under the authority of *Russian Reinsurance Co.* v. *Stoddard* (240 N. Y. 149) refuse to take jurisdiction of this case. In thus holding, " the corporation is deprived of no substantial right or benefit if our courts refuse to entertain jurisdiction of an action brought by it until the time comes when a government which we recognize rules the country of plaintiff's corporate domicile." (*Russian Reinsurance Co.* v. *Stoddard*, 240 N. Y. 149, 168.) The defendant, which expressly disclaims title to these funds, will be meanwhile protected from double liability, the possibility of which was recognized and was the ground of the decision of the court in the case last cited.

In view of these conclusions it is unnecessary to determine the other questions raised by defendant. For the reasons that plaintiff was not in existence at the time this action was started, that the former directors had no power or authority to institute this action at law, and that in any event the court should refuse to take jurisdiction of this action, a verdict is directed in favor of defendant dismissing the complaint herein with an exception to plaintiff.