In the Matter of the Accounting of HEDWY C. LUBERG, as Administratrix of the Estate of RUDOLF LUBERG, Deceased. HILDA M. LUBERG et al., Appellants; HEDWY C. LUBERG, as Administratrix of the Estate of RUDOLF LUBERG, Deceased, et al., Respondents.

First Department, October 29, 1963.

*Martin Popper* of counsel (*Robert J. Silberstein* and *David Sloane* with him on the brief; *Wolf Popper Ross Wolf & Jones*, attorneys), for appellants.

*Julius Greenfield* of counsel (*Paxton Blair* and *Kenneth D. Shearer* with him on the brief), *Louis J. Lefkowitz, Attorney-General*, respondent in person.

*Robert J. McGinn* for National Surety Corporation, respondent.

*Ero K. Djerf* for administratrix, respondent.

*P. A. Beck* for Acting Consul General of Estonia, respondent.

STEUER, J.   Rudolf Luberg died September 13, 1956, and Hedwy Criisa Luberg, his widow, was appointed administratrix. He left two sisters, the appellants here. They are Estonian nationals. The sisters appeared on the accounting by a New York law firm claiming to be their attorney in fact. The Attorney-General and the Estonian Consul — the latter also claiming to represent the sisters — challenge the right of the attorney in fact to appear and act in the proceeding. The Surrogate has upheld the challenge and stricken the appearance.

The main ground of the challenge, and that upon which it was sustained, was that there was no proper proof that the appointment of the attorney in fact was made. It appears that the sisters reside in the Village of Raplassk in Estonia. In December, 1958, they appeared before a senior notary at Tallin, Estonia, and executed a document designating Wolf Popper Ross Wolf & Jones as their attorney in fact. It appears that the United States does not recognize the sovereignty of the Soviet government over the Baltic States, including Estonia. Being fearful that the authorization, which was acknowledged and authenticated by Soviet officials acting in Estonia, would not be recognized, a second power was executed, at Leningrad, Russia, duly acknowledged and authenticated by Soviet officials acting in Russia. It is this second appointment which the Surrogate rejected as invalid. The reasoning to support this conclusion was that the acts of the Soviet officials could not authenticate a document executed in Estonia as the official acts

of those persons are not entitled to recognition here, and that to go into Russia, where these officials or their counterparts in Russia could act, would be accomplishing by indirection what could not be accomplished by direction.

There have been decisions which passed upon questions in regard to powers of attorney executed in Baltic countries and authenticated by Soviet officials acting in those countries (*Matter of Adler,* 197 Misc. 104; *Matter of Braunstein,* 202 Misc. 244). The reasoning is that a power of attorney relating to an interest in a decedent's estate must be acknowledged or proved in the manner required to entitle conveyance of real property to be recorded. A conveyance of real property executed in a foreign country must be accompanied by a certificate to the effect that the acknowledgment or proof conforms to the laws of such foreign country. The certificates involved certify conformation to the laws of the Soviet republic rather than the laws of the Baltic country in question. It is then concluded that to give effect to such a certification would be to acknowledge that the laws of Russia are applicable to the Baltic country, and to do so would run counter to the declared national policy.

Due to the fact that the second power of attorney, executed in Leningrad, is the one being relied on here, this question is not, strictly speaking, before us. However, the subsequent discussion necessitates some expression of our views on this situation to the extent that we do not adopt it as a premise. It is not every act of an official of an unrecognized government that is regarded as a nullity. The competence of the courts to give effect to such acts is only limited where the acts are political in character (*Russian Reinsurance Co.* v. *Stoddard,* 240 N. Y. 149). If this were not so, many situations would become intolerable. It would be impossible to establish the elementary facts of birth, marriage, death or the like where the certification of the same was made by, or the official before whom proof was to be taken was an appointee of, the unrecognized regime. Moreover, we would perforce have to refuse nationals of the regime that we do recognize access to our shores because the only persons who could in fact authenticate their passports would be officials of the regime that is not recognized. In that way we would be acting in a manner that was in practical effect more oppressive to those nationals whose independence we are seeking to further than is the government which usurped authority over them. We conclude that because the power was authenticated by an official of the *de facto* rather than the *de jure* government does not have the effect of requiring the court to disregard it.

Whether the fact the law certified to is the law of the *de facto* government nullifies the instrument, we are not called upon to pass on, and decision on that point would be of no effect in the determination to be reached. As regards the second power, that executed in Leningrad, the objection does not apply because the certification is as to the law of the place of execution and, as to that place, we recognize the suzerainty of that law. Without that objection it has been held that the power of attorney is entitled to recognition (*The Denny*, 127 F. 2d 404; *Matter of Braunstein, supra*).

However, it has been decided that it may be assumed without specific proof from the following facts: that the donors of the power travelled to Russia proper from their Baltic homes; that they had their dealings with "Iniurcolleguia" (a Soviet collective of lawyers presumably enjoying some official status as a department of the Russian Ministry of Justice); that they had no knowledge of the American lawyers who were appointed as their attorneys; that the designation was not their free choice and was the result of duress (*Matter of Padolsky*, N. Y. L. J., May 29, 1961, p. 16, col. 7). It has been further held, and followed by the Surrogate below, that even if the facts do not warrant a finding of duress, they do show that the authentication was accomplished by indirection where it could not be accomplished directly (*Matter of Mitzkel*, 36 Misc 2d 671). This reasoning begs the question. If the donor of the power could not execute one, for any reason, in the place of his residence, it would not be indirection for him to go to a place where he could execute it. It is only if it be assumed that the power is to be used for the purposes of someone other than the donor that indirection could be used to describe the transaction.

Drawing such implications goes directly contrary to the evidentiary rules as to the credit to be given acknowledgments of instruments by foreign officials (1 Am. Jur., Acknowledgments, § 140, p. 374; 5 Wigmore, Evidence [3d ed.], p. 518). It is obvious that discrediting the validity of the power stems from the fact that the Surrogates feel from the circumstances surrounding their origin and execution that the funds will not reach the donees but will be transmitted by the attorneys in fact, who in all of the recent cases have been a law firm which customarily represents the Soviet government and its various agencies, to their real correspondents, the Iniurcolleguia, and from there to the Russian government itself. Whether this concern is well-founded or not, we do not decide, as we do not believe it constitutes an objection to the power as such, though

it may be a legitimate issue for determination in a subsequent phase of the administration of the estate.

It is the duty of the Surrogate where circumstances make it appear that payment of a legacy would not go to the legatee, to hold the money for his benefit (Surrogate's Ct. Act, § 269). And, in such circumstances, to retain it until he is reasonably assured that it will reach its proper destination (*Matter of Braier,* 305 N. Y. 148; *Matter of Siegler,* 284 App. Div. 436). Upon an application to release the funds the questions which appear to have been troublesome can be properly litigated.

Consequently, the order striking the power of attorney and the appearance pursuant to it should be reversed and the motion denied. It might be argued that, in the event that the Surrogate deems it advisable to adopt the procedure directed in section 269, on any application to release the funds, the legatees would have no representation other than by the persons whose associations are among the factors which give rise to the Surrogate's suspicions. Were this the fact, an anomalous, but nonetheless serious, situation would be presented. But it is not, and this brings us directly to another phase of this appeal.

The Estonian Consul has appeared in this proceeding. It should be pointed out that he is the representative of the government which we recognize, and not of the Soviet. A consul may only appear for a claimant when that claimant has no other representation (*Matter of Zalewski,* 292 N. Y. 332; *Matter of D'Adamo,* 212 N. Y. 214). If a question arises as indicated above, on that issue the interest of claimants may be without representation. Under these conditions, and for that purpose, the Estonian Consul may remain in the proceeding and the Surrogate's refusal to strike his appearance is proper.

The order should be modified on the facts and the law by reversing so much of the order as strikes the power of attorney, and, as so modified, affirmed, without costs.

BREITEL, J. P., RABIN, EAGER and BASTOW, JJ., concur.

Order, entered on March 29, 1963, unanimously modified on the facts and the law by reversing so much of the order as strikes the power of attorney, and, as so modified, affirmed, without costs.