## Lewicki Estate

*James Francis Lawler, Ostroff & Lawler*, for beneficiaries.

*Alphonsus R. Romeika*, for Lithuanian Consul General.

**454**

*Herbert W. Salus, Jr., Special Assistant Attorney General,* and *Murray B. Dolfman,* for Commonwealth.

KLEIN, J., April 7, 1969.—

## SUPPLEMENTAL ADJUDICATION

Antoni Lewicki died on November 21, 1960, unmarried and without issue, leaving a will and codicil, which were admitted to probate on November 28, 1960, when letters testamentary were granted to Provident Tradesmens Bank and Trust Company (now Provident National Bank). Proof of advertisement of notice thereof has heretofore been produced to the auditing judge.

It is not necessary at this time to set forth the provisions of the will except the FOURTH paragraph thereof, which provides:

"FOURTH: I give my residuary estate as follows:

"75% thereof to my niece, Bronislawa Lewicki (Lewickute) who was born and reared in Vizary Kaimas, Daujinai Postos, and whose mother's maiden name was Bronislawa Marcinkejzuwna, she having been born and reared in Denbiski Paswalio Apr, or, should she predecease me, in equal shares to such of her children as are living at my death.

"25% thereof in equal shares per capita to such of the children of my brothers, Stanislawa Lewicki and Jons Lewicki, as are living at my death".

By adjudication dated May 4, 1964, the executor was directed to pay the balance of principal shown in the account, together with the share of the estate of Wladyslaw Lewicki, Antoni Lewicki's deceased brother, which was awarded to the accountant by adjudication of this court, dated February 10, 1964, which was not included in the account, to the Commonwealth of Pennsylvania for payment into the State Treasury, without escheat, pursuant to section 1314 of The Fiscal Code of April 9, 1929, P. L. 343, 72 PS §1, without

prejudice to the rights of the parties in interest. A schedule of distribution filed by the accountant discloses that $110,522.44, principal and $10,690.41, income was paid into the State Treasury.

On April 17, 1968, in the Struchmanczuk Estate, 44 D. & C. 2d 155, this court, relying upon Zschernig v. Miller, 389 U.S. 429 (1968), ruled that the so-called Iron Curtain Act of July 28, 1953, P. L. 674, 20 PS §1155, and section 737 of the Fiduciaries Act of April 18, 1949, P. L. 512, as amended 20 PS §320.737, were unconstitutional. The auditing judge so rules in the instant case.

A petition was filed by Ostroff and Lawler, attorneys in fact for the following persons, who claim to be the persons entitled to the residue of the estate of Antoni Lewicki, all of whom are residents of Lithuania, in the proportions set opposite their names:

"Children of Brother, Stanislawa Lewicki:

Bronislawa Lewicki
niece 25/32nds (being the 75% specifically bequeathed her and the 1/8th of 25% bequeathed her by virtue of her being one of the 8 children of the deceased brothers, Stanislawa Lewicki and Jons Lewicki)

| | | |
|---|---|---|
| Jadvyga Levickaite-Kleinotiene | niece | 1/32nd |
| Stase Levickaite-Backiene | niece | 1/32nd |
| Vladas Levickas | nephew | 1/32nd |
| Ceslovas Levickas | nephew | 1/32nd |

"Children of Brother, Jons Lewicki:

| | | |
|---|---|---|
| Adele Levickaite | niece | 1/32nd |
| Janina Levickaite | niece | 1/32nd |
| Stasys Levickas | nephew | 1/32nd" |

Hearings were held before me on several dates at which Mr. Lawler submitted powers of attorney executed by them before Cord D. Hansen-Strum, Vice-Consul of the United States in Moscow. The powers were made in favor of Wolf, Popper, Ross, Wolf & Jones, a New York law firm, who have delegated Ostroff and Lawler as their substitute attorneys-in-fact with authority to prosecute their claims as attorneys-at-law. Mr. Lawler also submitted documentary proof which satisfied me with respect to the identity of the claimants he represents and the authenticity of their claims. I therefore find as a fact that the following persons all residents of Lithuania are entitled to the residue of this estate, as nieces and nephews of decedent, Antoni Lewicki, in the proportions designated: Bronislawa Lewicki, 25/32nds; Jadvyga Levickaite-Kleinotiene; Stase Levickaite-Backiene; Vladas Levickas; Ceslovas Levickas; Adele Levickaite; Janina Levickaite; Janina Levickaite; and Stasys Levickas, 1/32nd, each.

Herbert W. Salus, Jr., Esq., Special Assistant Attorney General for the Commonwealth of Pennsylvania, has indicated that he is satisfied that the identity of the aforelisted Lithuanian claimants has been properly established and that he has no objection to distributing the residue of the estate to them in the proportions herein set forth.

In view of our ruling in the Struchmanczuk case, supra, no impediment now exists to the payment of the estate funds directly to the Lithuanian nationals by reason of any Pennsylvania statutory or decisional law.

Alphonsus R. Romeika appeared for the Lithuanian Consul. He contends that any distribution to be made to a Lithuanian National must be through the Lithuanian Consul General because the United States does not recognize the military conquest of Lithuania by

Russia. He contends, further, that the execution of a power of attorney by a Lithuanian National before an official of the U.S.S.R. is a political act and admitting it in evidence "would be contrary to the United States Government non-recognition policy of incorporation of Lithuanian (sic) into Russia".

Mr. Lawler, on the other hand, vigorously maintains that the manner in which the Letters of Attorney and other documents submitted in behalf of the claimants were validly obtained must be recognized by the court.

The official position of the United States Government is set forth in a letter of February 5, 1969, to Mr. Salus from Hobart Luppi, Director, Office of Special Consular Services, Department of State, in which he states:

"The United States does not recognize the forcible incorporation of Lithuania into the Union of Soviet Socialist Republics and does not maintain diplomatic or consular officers in Lithuania. The United States does not recognize any Lithuanian 'government in exile'; it does, however, continue to extend recognition to the diplomatic and consular representatives of the last duly consituted government of Lithuania accredited to the United States.

"Nevertheless, in order to be of assistance to the United States citizens with legal matters in Lithuania, the Department has authorized the American Embassy at Moscow to authenticate the signatures and seals of Soviet officials on documents as a matter of expediency and in the interest of the furtherance of justice. Such action, however, should not be construed as to extend to the recognition of the political regime".

The same question as is before us was presented in New Jersey by the Lithuanian Consul General in In re Alexandravicus, 83 N. J. Super. 303, 199 A. 2d 662 (1964), in which the court held that although consular intervention may ofttimes be the most effective way to

protect the fundamental rights of aliens in decedent's estates, the authority of a consulate agency terminates if and when the national selects other representation.

A similar question was also involved in In re Luberg's Estate, 19 A.D. 2d 370, 243 N.Y.S. 2d 747 (App. Div. 1963), where two powers of attorneys were involved, one executed and notarized in Estonia, and the other in Russia. The court held that acknowledgment and authentication by Soviet officials acting in Russia of a power of attorney executed by persons residing in Estonia was entitled to recognition and could not be denied validity on the theory that it constituted an attempt to do by indirection what could not be done directly. Mr. Justice Steuer said, p. 750:

". . . It is not every act of an official of an unrecognized government that is regarded as a nullity. The competence of the courts to give effect to such acts is only limited where the acts are political in character (Russian Reinsurance Co. v. Stoddard, 240 N.Y. 149, 147 N.E. 703). If this were not so, many situations would become intolerable. It would be impossible to establish the elementary facts of birth, marriage, death or the like where the certification of the same was made by, or the official before whom proof was to be taken was an appointee of, the unrecognized regime. Moreover, we would perforce have to refuse nationals of the regime that we do recognize access to our shores because the only persons who could in fact authenticate their passports would be officials of the regime that is not recognized. In that way we would be acting in a manner that was in practical effect more oppressive to those nationals whose independence we are seeking to further than is the government which usurped authority over them. We conclude that because the power was authenticated by an official of the de facto rather than the de jure government does not have the effect of requiring the court to disregard it".

I am in full agreement with Judge Steuer. If the argument of the Lithuanian Consul General were accepted literally it could result in the anomalous situation of depriving the citizens of Lithuania, who have been so cruelly and harshly treated by their communist conquerors, of the right to receive inheritances from their more fortunate brethren who emigrated to this country. It would be really heaping injustice upon tyranny. This we will not sanction. Accordingly, we accept the powers of attorney executed by the Lithuanian beneficiaries before the United States Vice Consul in Moscow, as valid documents for the purpose for which they have been executed.

For further discussion of this subject see Matter of D'Adamo, 212 N.Y. 214 (1914); cf. Matter of Zalewski, 292 N.Y. 332, 339 (1944); see also Boyd, "Consular Functions in Connection with Decedents' Estates", 47 Iowa L. Rev. 823, 826, 827 (1962).

Mr. Salus, the Special Assistant Attorney General, who over the years has been of inestimable assistance to the courts of this state, has suggested to the auditing judge a formula, for distribution to the Lithuanian nationals, which protects the legal position of the Lithuanian Consul General and yet would result in prompt payment to the beneficiaries, without involving this estate in additional complex litigation in dimly lit areas of international law. Mr. Salus's suggestions will be adopted by the auditing judge and incorporated in the following

### DECREE

And now, this April 7, 1969, upon consideration of the within petition and upon hearing duly held, it has been established by proof to the satisfaction of the court that the claimant, Bronislawa Lewicki, is the owner and the proper person entitled to receive 25/32nds of the distributive funds in the estate of Antoni Lewicki, deceased; and the claimants, Jadvyga

Levickaite-Kleinotiene, Stase Levickaite-Backiene, Vladas Levickas, Ceslovas Levickas, Adele Levickaite, Janina Levickaite and Stasys Levickas, are the owners and the *proper persons* entitled each to receive 1/32nd of the distributive funds in said estate, which by adjudication dated May 4, 1964, were awarded to the Commonwealth of Pennsylvania for payment into the State Treasury, without escheat, pursuant to section 1314 of The Fiscal Code of April 9, 1929, P. L. 343.

Accordingly, the Board of Finance and Revenue is hereby directed to make an order for the repayment of said funds in the State Treasury appropriated for that purpose with interest thereon at the rate of two percent per annum, as provided by law, said funds to be paid to Anicetas Simutis, Consul General of Lithuania at New York City, New York, and his attorney, Alphonsus R. Romeika, jointly.

Messrs. Simutis and Romeika are hereby charged with the duty to pay the following: (1) such transfer inheritance tax, if any, together with interest and penalty thereon, as may be duly appraised and assessed; (2) $1,500 counsel fee to Alphonsus R. Romeika, for legal services rendered; (3) $500 to Anicetas Simutis, Consul General of Lithuania at New York, for services rendered; (4) $709.80 to Ostroff and Lawler for expenses incurred; and (5) 25 percent of the net proceeds, after payment of the aforelisted items, to Ostroff and Lawler, as counsel fees for services rendered, pursuant to their agreement with the beneficiaries.

The said Anicetas Simutis and Alphonsus R. Romeika shall then forthwith deposit the balance of the fund remaining after payment of said counsel fee in the Chase Manhattan Bank, N.A., 1 Chase Manhattan Plaza, New York, New York, for the account of each legatee, in proper proportionate shares, as heretofore designated, subject to the following instructions:

The distributive amount due each legatee to be placed in dollar accounts in the name of said legatee, payment thereof to be conditioned upon such legatee signing a satisfaction of award in the presence of an American Consul; upon receipt of such signed satisfaction of award by the Chase Manhattan Bank, it shall authorize the payment of such legatee's fund to the legatee in dollar accounts.

Copies of the satisfactions of award and proof of payments to such legatees shall be filed in this court.

In all other respects the adjudication of May 4, 1964, is confirmed and the account is reconfirmed nisi.